

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00050-CV

_____

JOHN LEEMAN ISAACS AND SUSAN GAIL ISAACS, Appellants

V.

ROBERT G. SCHLEIER, JR., AND SCHLEIER & BROWN, P.C., Appellees

On Appeal from the 124th Judicial District Court
Gregg County, Texas
Trial Court No. 2005-2176-B

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

John Leeman Isaacs and Susan Gail Isaacs appeal from a final take-nothing summary judgment entered in favor of their former attorney Robert G. Schleier, Jr., and his firm Schleier & Brown, P.C. We affirm the trial court's summary judgment because we conclude that the statute of limitations barred the Isaacses' claims, and no tolling provisions apply.

## I. Factual and Procedural History

The claims involved in this lawsuit stem from actions which resulted in a prior lawsuit filed by Charles Bishop against the Isaacses and Schleier and Schleier & Brown, which we decided in our opinion *Isaacs v. Bishop*, 249 S.W.3d 100 (Tex. App.—Texarkana 2008, pet. denied), referred to by the parties as the Harrison County litigation. The events giving rise to the prior lawsuit are imperative to the understanding of the claims and arguments in this case.

### A. The Sale of the Racetrack to Bishop and Alleged Default

The Isaacses purchased the Hallsville Dragway (the racetrack) from Ken Hall in 1998. Schleier prepared the documents for the sale, including the promissory note and deed of trust between the Isaacses and Hall. In 2002, the Isaacses wished to sell the track to Bishop. They enlisted Schleier to prepare the documents for the sale in the same manner as in the Hall transaction. After meeting with John and Bishop in March 2002, Schleier prepared the documents, charging both parties a fee. The "Deed of Trust, Security Agreement and Financing Statement" (deed of trust) listed Schleier as the trustee, and the version signed by Bishop contained

2

an "insecurity clause," which could have allowed the Isaacses to deem themselves insecure concerning the prospects for Bishop's repayment of the indebtedness, an occasion included—by definition in paragraph 3.01, subparagraph M, of the deed of trust—as an "Event of Default," giving the Isaacses the ability, in such a circumstance, to accelerate the debt and declare it wholly due.

This provision was not included in the deed of trust signed by the Isaacses, and was also absent from the 1998 deed of trust from the Isaacses in favor of Hall.

A few months after the sale was completed, a physical rumble at the racetrack erupted in September 2002. In our prior opinion, *Isaacs*, we wrote:

> Six months after the sale, the Isaacs family--including father, mother, son, and daughter on this occasion--visited the track and were involved in a brawl with a handicapped track worker and his wife. The evidence shows that Bishop got involved in the melee in attempting to break it up. Bishop called the police, who arrested John Isaacs. When released from jail the next morning, John Isaacs reportedly called Bishop and attempted to get Bishop to change his version of events to shift blame away from John Isaacs. That attempt was, reportedly, accompanied by threats of physical violence and fiscal destruction to Bishop; the jury found threats did indeed occur. There was also evidence that Isaacs paid two fight witnesses to testify "appropriately" and that, when one began to waver, Isaacs threatened that witness with physical violence.

249 S.W.3d at 104 (footnote omitted). The Isaacses stated that "[f]ollowing the physical altercation, hard feelings developed between John Isaacs and Buyer Bishop," which prompted "investigation into the circumstances of the operations of the [racetrack]."

3

This investigation led to the conclusion that Bishop was in violation of terms of the security agreement and deed of trust for failure to deliver "full insurance policies naming the Isaacs[es] as additional insured[s]." As a result, Schleier issued a notice of default on the Isaacses' behalf on September 25, 2002, stating "the Isaacs[es] have instructed me to begin foreclosure proceedings against the Property." On September 30, 2002, Bishop's attorney Bruce A. Craig responded to the notice of default in the following manner:

> My understanding of the transaction is that your firm represented both sides to the deal. Under those circumstances, my client objects to your representation in this matter of the Isaacs[es] and demands your immediate withdrawal as counsel. In as much as you have represented my client in this the [sic] same matter through the closing of the sale, a clear conflict exists which require[s] you to withdraw from further representation of the Isaacs[es] in this matter under the Texas Rules of Disciplinary Conduct.

Schleier responded by denying that he had represented Bishop when drafting the sale purchase documents and reissuing notice of default.

### B.     Claims in the Harrison County Suit

Thus, Bishop filed suit against the Isaacses, Schleier, his firm (and other parties) in October 2002 in Harrison County, Texas. Bishop's petition asserted the following claims against the Isaacses: (1) assault and battery against John in connection with the brawl that led to the Isaacs family's arrest; (2) common law and statutory real estate fraud for "failing to disclose that the Schleier Defendants . . . had been counsel for the Isaacs Defendants for at least the past four years," falsely promising that the Schleier Defendants would represent both parties to the transaction,

4

falsely denying that the Isaacses had not authorized the sale of a Ford tractor, falsely representing the quantity of land conveyed in the transaction,[1] falsely describing the terms of the lease arrangement with the customers of the track (Ashmore Defendants), and falsely representing the status of title and failing to disclose known defects in the title to be acquired; (3) tortious interference with business and/or contractual relations between Bishop and the Ashmore Defendants; (4) intentional infliction of emotional distress; and (5) civil conspiracy.

These causes of action were also asserted against Schleier and the firm: (1) the common law and statutory real estate fraud claims;[2] (2) professional negligence/breach of fiduciary duty in failing to: disclose that he had represented the Isaacses in the past; advise that no consideration could exchange hands until the documents were prepared and signed; timely prepare the documentation for the transaction; draft terms that were agreed upon; disclose how the terms in the documents presented for execution varied from those discussed; draft terms fair to both parties, including the on-demand feature; disclose and fully explain the significance of the conflicts of interest that existed when representing the parties on both sides; properly transfer title to a mobile home and in securing a release of lien from Hall; (3) intentional infliction of emotional distress; and (4) civil conspiracy. Also, the "Isaacs[es] sued Bishop to accelerate the maturity of the note

---

[1]Results of a survey indicated "substantially more of the Hallsville Race Track was on the [adjacent owner's] property than John Isaacs had previously represented to Bishop."

[2]Bishop alleged Schleier knew of title defects, failed to disclose them, and failed to explain the importance of the title defects or need for title insurance.

and foreclose on the track, seeking a judgment on the note balance.  In response, Bishop sought to rescind the track purchase."  *Id.*

### C.      Claims in This Gregg County Suit

Throughout the litigation, Schleier denied any attorney-client relationship with Bishop—until he testified on the stand in 2005.  As a result of this admission on the stand, the Isaacses instituted this suit against Schleier and the firm in Gregg County on September 26, 2005. The Isaacses' claims in this suit are based on the contention that "[t]he Isaacs[es] and their counsel in the Harrison County Litigation also relied . . . on the repeated factual denials by Attorney Schleier of any dual attorney-client relationship."  The Isaacses' petition recited,

> [t]he claims of Buyer Bishop in the Harrison County Litigation also named Attorney Schleier and Schleier P.C. as defendants, asserting numerous tort claims . . . each theory based on the factual premise and claim that Attorney Schleier had, during the negotiation and documentation process culminating in the sale of the Race Track, agreed to serve as and, in fact, was also the fiduciary attorney and agent for Buyer Bishop as well.

When Schleier testified, the Isaacses argued,

> [t]his untimely disclosure by Attorney Schleier of the previously-concealed and/or previously-misrepresented existence of his *dual* attorney-client role with Buyer Bishop in the sale of the Race Track suddenly, and without warning to the Isaacs[es] or their trial attorneys, dramatically compromised and substantially impaired the ability of the Isaacs[es] to defend the allegations against them of fraud and non-disclosure by Buyer Bishop, . . . causing, in part, the jury to return a large adverse verdict against John Isaacs for fraud in the inducement and non-disclosure in the sale of the Race Track . . . .

Therefore, the Isaacses asserted the following causes of action against Schleier and the firm: (1) "Breach of the Agency Contract (i.e. the Agent's/Attorney's strict duty of loyalty to the Principal/Client to follow clear and lawful instructions)" in including the on-demand feature into the deed of trust; (2) negligence in not following instructions regarding terms to be included in promissory note, placing the on-demand clause in the note, undertaking to represent the naturally conflicting interests of both parties, failing to obtain informed consent of the Isaacses before undertaking any adverse representation, failing to timely inform them that he represented both in the Harrison County Litigation, and failing to secure something in writing from Bishop saying Schleier was only acting as attorney for the Isaacses; and (3) "Breach of Fiduciary Duty and Constructive Fraud" based on the same conduct.

### D. Outcome of the Harrison County Litigation

The Harrison jury charge and judgment sheds light upon the Isaacses' claims in this litigation. Following a trial, the jury found that an attorney-client relationship had been established between Bishop and Schleier and that Schleier and the firm were negligent since "'but for' [their] alleged negligence, Bishop would have prevailed on his claim against the Isaacs Defendants for rescission or reformation before the trial court July 2003." They also found that Schleier failed to comply with his fiduciary duty to Bishop and that $171,000.00 would compensate Bishop for Schleier's tortious actions. After the jury's verdict, Schleier settled with Bishop.

7

With respect to the Isaacses, the jury found, in a general submission, that the Isaacses committed fraud, awarded Bishop $171,000.00 in actual damages, $400,000.00 in special damages, and $200,000.00 in attorney's fees for preparation and trial. The jury also found the Isaacses intentionally inflicted emotional distress upon Bishop with malice. They awarded $50,000.00 for this claim. The amount owed by the Isaacses to Bishop were offset against the sums Bishop owed to the Isaacses under a replacement note.[3] The trial court's final judgment incorporating the jury's answers awarded Bishop $419,700.00 for actual damages and attorney's fees, and pre-judgment interest in the amount of $22,130.74.

Although the claims in this case in Gregg County stem from the Harrison County litigation, and the Isaacses argue they were harmed because the tort offsets to Bishop were based on Schleier's and the firm's conduct in "the untimely disclosure of the dual attorney-client relationship," we stated in our prior opinion, and reiterate today, that:

> Although related, the actions Bishop brought against Schleier were not the same ones brought against the Isaacs[es]. [The] Isaacs[es] [do] not argue now, and did not argue then, that either [the] Isaacs[es] or Schleier would be liable for the damages caused by the other in those alternative causes of action. The trial court carefully separated the damages to avoid overlap, and each defendant was found liable for damages for the particular causes of action asserted against that party.

---

[3] "During the course of the litigation, because Bishop could not get alternative financing, Bishop created the corporation Hallsville Dragway, Inc. (hereinafter HDI), and transferred the track into it. HDI later filed for bankruptcy protection, and the bankruptcy court ordered the original note to be replaced with a 'Replacement Note' containing less severe terms." *Isaacs*, 249 S.W.3d at 104.

8

*Id.* at 109.   We also note that Schleier was not part of the percentage of responsibility determination made by the jury as to Bishop's claims against the Isaacses.   *Id.*[4]

Additionally, we stated with respect to the fraud finding against the Isaacses:

> The record reveals evidence of fraud.   There was evidence that [the] Isaacs[es] and Bishop met with Schleier to discuss documenting the purchase of the track, that they jointly planned to use the same terms and documents as had been used when the Isaacses had purchased the track four years earlier, intending to draft the promissory note to include notice and cure rights and to exclude a demand feature. Isaacs agreed to all of this, but there is evidence that, two days before the documents were to be mailed, Isaacs contacted Schleier and directed him to change the terms to include the demand feature in the note.   Isaacs admitted that he so instructed the attorney. Because this is some evidence that Isaacs perpetrated a fraud on Bishop, the evidence is sufficient. . . .
>
> . . . .
>
> . . . . There is evidence that Isaacs made a representation to Bishop about the note's content, but then, unilaterally and without notice to Bishop, directed that the document be changed to remove that portion and to add another section that completely changed the note's original content.[5]

*Isaacs*, 249 S.W.3d at 114.

### E.      Procedural History of This Case

With this background in mind, we turn to the procedural history in this case.   The Isaacses filed a motion for partial summary judgment on the breach of contract liability, contending that Schleier "while acting in the trusted fiduciary role of Agent/Attorney for these prior Clients, (i.e.

---

[4]Schleier and the firm argue that to the extent this is a suit for contribution, it is barred.   The Isaacses say that this is not a claim for contribution.

[5]In Schleier's March 3, 2005, trial testimony, he denied that the demand feature was specifically put in.   Instead, he claimed that the feature was added because "my forms had changed since the time of the Ken Hall transaction, and, and my commercial note forms have automatically a demand feature in them."

John Leeman Isaacs and Susan Gail Isaacs), violated his common-law agency contract duty to follow clear and lawful instructions given him by those prior Clients," by including the on-demand provision and failing to make the transaction the same as the Hall sale. Schleier and the firm filed a motion for summary judgment arguing that the Isaacses' claims were actually claims of malpractice, that malpractice claims are barred by a two-year statute of limitations, and, therefore, that the Isaacses' claims are barred. Schleier also asserted the claims were barred by res judicata and that they were claims of contribution which should have been raised in the Harrison County litigation. The Isaacses responded by filing a no-evidence motion for summary judgment on these affirmative defenses. They argued that these are not malpractice claims and that they did not discover that any cause of action existed until Schleier's testimony on the stand in the spring of 2005 admitting dual representation.

The trial court granted a final, take-nothing summary judgment in favor of Schleier and the firm after a hearing. The Isaacses appeal the summary judgment on the following grounds: (1) the two-year statute of limitations applicable to the Isaacses' claims for professional negligence is subject to the tolling devise of fraudulent concealment based on misrepresentations and/or nondisclosures preventing the Isaacses from discovering the dual representation, (2) the statute of limitations is tolled by the discovery rule, (3) the statute of limitations is tolled by *Hughes v. Mahaney*, which tolls the commencement of limitations until the underlying litigation involving a client is resolved, (4) their claims are not malpractice claims, and (5) this is not an

action for contribution. The Isaacses also argue that the trial court erred in failing to grant their partial motion for summary judgment, failing to grant their "no-evidence motion" on the affirmative defense of res judicata, and failing to strike Schleier's testimony as unreliable expert testimony.[6] We find the statute of limitations and lack of application of tolling provisions dispositive of this appeal.

## II.  Standard of Review

The standards for reviewing summary judgments are well established. We review de novo the trial court's decision to grant summary judgment. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).

When both sides move for summary judgment, as they did here with respect to the breach of contract claim and Schleier and the firm's affirmative defenses, "and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered." *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 340 S.W.3d 570, 574 (Tex. App.—Texarkana 2011, no pet.) (quoting *Gilbert Tex. Constr.*, *L.P. v. Underwriters at Lloyd's*

---

[6]The Isaacses also argued as a separate point of error that the trial court erred in failing to strike Schleier's affidavit as an improper expert opinion because it was unreliable with regard to the conclusion that "events occurring in September of 2002 could be evidence of an alleged fraud-in-the-inducement which was completed in May of 2002."

11

*London*, 327 S.W.3d 118, 124 (Tex. 2010)). Each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Employers Reinsurance Corp. v. Gordon*, 209 S.W.3d 913, 917 (Tex. App.—Texarkana 2006, no pet.) (citing *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993); *Ranger Ins. Co. v. Ward*, 107 S.W.3d 820, 824 (Tex. App.—Texarkana 2003, pet. denied)). If neither movant is entitled to summary judgment, we must remand the case to the trial court. *Id.* (citing *Ward*, 107 S.W.3d at 824).

With respect to the remaining negligence, breach of fiduciary duty, and fraud claims, "[w]hen, as here, a defendant moves for summary judgment based on the affirmative defense of limitations, the defendant assumes the burden of showing as a matter of law that the suit is barred by limitations." *Murphy v. Mullin*, *Hoard & Brown*, *L.L.P.*, 168 S.W.3d 288, 291 (Tex. App.—Dallas 2005, no pet.) (citing *Rogers v. Ricane Enters.*, *Inc.*, 772 S.W.2d 76, 80–81 (Tex. 1989)). "The defendant must (1) conclusively prove when the cause of action accrued, and (2) if raised, negate the discovery rule, by proving there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence, should have discovered the nature of its injury." *Id.* (citing *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990)). "In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true" and "[e]very reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor." *Nixon*, 690 S.W.2d at 548–49.

## III.     The Isaacses' Claims Are Malpractice Claims

"Legal malpractice is not the only cause of action under which a client can recover from [their] attorney." *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Kahlig v. Boyd*, 980 S.W.2d 685, 688 (Tex. App.—San Antonio 1998, pet. denied)).   "When the facts of a case support claims against a lawyer for something other than professional negligence," the claims may be allowed.   *Murphy v. Gruber*, 241 S.W.3d 689, 695 (Tex. App.—Dallas 2007, pet. denied) (citing *Latham v. Castillo*, 972 S.W.2d 66, 68, 71 (Tex. 1998) (allowing pursuit of Deceptive Trade Practices Act (DTPA) cause of action for attorney's allegedly unconscionable action in representing he was actively prosecuting client medical malpractice claim when he was not)).   *But see Brescia v. Slack & Davis, L.L.P.*, No. 03-08-00042-CV, 2010 WL 4670322, at *7 (Tex. App.—Austin Nov. 19, 2010, pet. denied) (mem. op.) (attorneys may not be sued under DTPA unless misrepresentation cannot be characterized as advice, judgment, or opinion) (citing TEX. BUS. & COM. CODE ANN. § 17.49(c)(1) (West Supp. 2011)).

"Texas law, however, does not permit a plaintiff to divide or fracture her legal malpractice claims into additional causes of action." *Goffney*, 56 S.W.3d at 190 (citing *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Kahlig v. Boyd*, 980 S.W.2d 685, 688–91 (Tex. App.—San Antonio 1998, pet. denied); *Smith v. Heard*, 980 S.W.2d 693, 697 (Tex. App.—San Antonio 1998, pet. denied); *Rodriguez v. Klein*, 960 S.W.2d

179, 184 (Tex. App.—Corpus Christi 1997, no pet.); *Am. Med. Elecs.*, *Inc. v. Korn*, 819 S.W.2d 573, 576 (Tex. App.—Dallas 1991, writ denied); *Judwin Props.*, *Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 506 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Bray v. Jordan*, 796 S.W.2d 296, 298 (Tex. App.—El Paso 1990, no writ)).   Therefore, in general, courts do not allow a case arising out of an attorney's alleged bad legal advice or improper representation to be split out into separate claims for negligence, breach of contract, or fraud, because the "real issue remains one of whether the professional exercised that degree of care, skill, and diligence that professionals of ordinary skill and knowledge commonly possess and exercise." *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Averitt v. PriceWaterhouseCoopers L.L.P.*, 89 S.W.3d 330, 333 (Tex. App.—Fort Worth 2002, no pet.); *Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex. App.—El Paso 1988, no writ) ("Nothing is to be gained by fracturing a cause of action arising out of bad legal advice or improper representation into claims for negligence, breach of contract, fraud or some other name.   If a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice with one set of issues which inquire if the conduct or omission occurred, if that conduct or omission was malpractice and if so, subsequent issues on causation and damages.")).

Schleier and the firm contend that the Issacses' claims are malpractice claims that are barred by a two-year statute of limitations.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2011).   "When the basis for summary judgment is the statute of limitations, the

14

movant has the burden to show from the record that the suit is barred by limitations. *Kimleco*, 91 S.W.3d at 923 (Tex. App.—Fort Worth 2003, pet. denied) (citing *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983); *Wright v. Fowler*, 991 S.W.2d 343, 349 (Tex. App.—Fort Worth 1999, no pet.)). "Whether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court." *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (quoting *Murphy*, 241 S.W.3d at 692).

We address each cause of action in the Isaacses' complaint. The Isaacses sued Schleier and the firm for breach of contract, negligence, breach of fiduciary duty, and constructive fraud. The breach of contract action was based upon an alleged failure to follow the Isaacses' instructions to draft the documents in the same manner as in the Hall transaction. Claims of negligence arose from not following such instructions by placing the on-demand clause[7] in the note, undertaking dual representation without disclosure of the nature of the representation, and in failing to timely inform the Isaacses of the dual representation. The same actions gave rise to the breach of fiduciary duty and constructive fraud causes of action.[8]

"[T]he plaintiff must do more than merely reassert the same claim for legal malpractice under an alternative label. The plaintiff must present a claim that goes beyond what traditionally

---

[7]The Isaacses admitted that the on-demand feature of the note was never exercised.

[8]We note that the Isaacses' brief describes the (entire) litigation as a legal malpractice action.

has been characterized as legal malpractice." *Duerr*, 262 S.W.3d at 70. Each cause of action is taken in turn to see whether this has been accomplished.

### A. The Breach of Contract Claim Is a Malpractice Claim

"Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice." *Kimleco*, 91 S.W.3d at 924 (citing *Greathouse*, 982 S.W.2d at 172; *Averitt*, 89 S.W.3d at 333 (cause of action based on attorney's alleged failure to perform professional service is tort rather than breach of contract, regardless of whether written contract providing for professional services exists between attorney and client); *Goffney*, 56 S.W.3d at 191 (finding claims of attorney who failed to prepare for trial and abandoned client on day of trial to be claims for malpractice instead of breach of contract)).

The breach of contract claim in the Isaacses' petition involves Schleier's alleged failure to follow "clear and lawful instructions." Disobeying a client's lawful instruction has been routinely recited to be a malpractice claim. *McInnis v. Mallia*, No. 14-09-00931-CV, 2011 WL 782229, at *7 (Tex. App.—Houston [14th Dist.] Mar. 8, 2011, pet. denied) (mem. op.); *Beck v. Looper, Reed & McGraw, P.C.*, No. 05-05-00724-CV, 2006 WL 1452108, at *2 (Tex. App.—Dallas May 26, 2006, no pet.) (mem. op.); *Kimleco*, 91 S.W.3d at 923; *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App.—Austin 1985, no writ). We conclude that the breach of contract claim was improper fracturing of legal malpractice and was subject to the two-year statute of

16

limitations. *See Haas v. George*, 71 S.W.3d 904, 910 (Tex. App.—Texarkana 2002, no pet.) (emphasizing that breach of contract action arose out of same facts as legal malpractice claim); *Cuyler v. Minns*, 60 S.W.3d 209, 216 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (concluding breach of contract claim that was an impermissible fracturing of a legal malpractice claim); *Mullin*, 168 S.W.3d at 290 n.1 (claim was actually a claim for professional negligence where focus of clients' allegations was negligent drafting or review of documents and failure to timely inform clients of defects in documents).

### B. The Negligence Claims Are Malpractice Claims

The Isaacses' negligence claims complain of failure to follow instruction in drafting the sale documents, representing the "naturally conflicting interests of" the Isaacses and Bishop, failing to obtain informed consent regarding the dual representation, failing to timely inform the Isaacses of the dual representation, and failing to secure written acknowledgement that Schleier was only acting as attorney for the Isaacses. Again, failure to follow client instruction in this case is a malpractice claim. The remaining negligence claims involve conflict of interest.

As stated in *Murphy*, "[c]ourts in this state have reached different results in deciding whether a conflict-of-interest allegation against a lawyer gives rise to a claim for professional negligence or some other cause of action." *Murphy*, 241 S.W.3d at 698 (finding the Brocks' allegations of conflict of interest were claims of professional negligence: (1) where attorneys continued to represent co-plaintiff after co-plaintiff was sued by way of counterclaim without

17

written waiver by the Brocks; (2) where lawyers failed to inform the Brocks of all material facts when conflicts of interest arose; and (3) where lawyers had the Brocks sign settlement agreement without advising them of effect of such release) (citing *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 187, 190 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 873 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Archer v. Med. Protective Co.*, 197 S.W.3d 422, 427–28 (Tex. App.—Amarillo 2006, pet. denied)).

Generally, where an attorney has gained some improper benefit from the conflict or improperly failed to disclose his or her own conflict of interest, other causes of action may proceed. *Id.* at 696. But, "characterizing conduct as a 'misrepresentation' or 'conflict of interest' does not alone transform what is really a professional negligence claim into either a fraud or a breach-of-fiduciary-duty claim." *Id.* at 697 (citing *Aiken*, 115 S.W.3d at 29; *Kimleco*, 91 S.W.3d at 924; *Ersek*, 69 S.W.3d at 270, 274; *Goffney*, 56 S.W.3d at 193–94; *Greathouse*, 982 S.W.2d at 172–75; *Klein*, 923 S.W.2d at 49). "Instead, to determine what statute of limitations applies to the claims, we must discern the real substance of the claims." *Id.* "[C]ourts have held the claim is a professional negligence claim if the claim is really that the lawyer's conflict of interest prevented him from adequately representing the client." *Id.* at 696.

We find that because the Isaacses' negligence claims regarding conflicts raise the issue of whether Schleier "exercised that degree of care, skill, and diligence that [lawyers] of ordinary skill

18

and knowledge commonly possess and exercise," the claim is one for legal malpractice.[9] *Kimleco*, 91 S.W.3d at 924; *see Pham*[10] *v. Nguyen*, 763 S.W.2d 467 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

### C. Breach of Fiduciary Duty and Fraud Claims Are Malpractice Claims

As to the breach of fiduciary duty cause of action (which are related to the alleged conflict in the dual representation), the Isaacses cite to *McMahan v. Greenwood*, 108 S.W.3d 467, 495–96 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The allegation in *McMahan* was that an attorney gave false information to a client regarding his stock ownership in a company, which resulted in the client's continued transfer of assets into the company and acquiescence to a settlement agreement in favor of a partner who was represented by the attorney. The court found some evidence that the attorney had actual knowledge of alleged wrongful acts. *Id.* at 493. In this breach of fiduciary duty case, *McMahan* reiterated the concept that an attorney can be liable if there are allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice action, which we find are not present here. *Id.* at 495.

In helping to decide the true nature of the Isaacses' claims, our sister court in *Kimleco* explained:

---

[9]Also of concern are the elements of proximate cause and damages. This Court is puzzled as to how Schleier's dual representation, and alleged late disclosure of the dual representation is a proximate cause of any damage to the Isaacses.

[10]This case is misnamed. It should be *Tinh v. Nguyen*.

19

The focus of breach of fiduciary duty is whether an attorney obtained an improper benefit from representing a client, while the focus of a legal malpractice claim is whether an attorney adequately represented a client. *See Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (giving examples of when a breach of fiduciary duty has occurred); *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

The essence of a breach of fiduciary duty involves the "integrity and fidelity" of an attorney. *Goffney*, 56 S.W.3d at 193. A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, using the client's confidences improperly, taking advantage of the client's trust, engaging in self-dealing, or making misrepresentations. *Id.*

Unlike a claim for breach of fiduciary duty, legal malpractice is based on negligence, because such claims arise from an attorney's alleged failure to exercise ordinary care. *Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989) (op. on reh'g). A cause of action for legal malpractice arises from an attorney giving a client bad legal advice or otherwise improperly representing the client. *Greathouse*, 982 S.W.2d at 172. For example, an attorney can commit legal malpractice by giving an erroneous legal opinion or erroneous advice, by failing to give any advice or opinion when legally obliged to do so, by disobeying a client's lawful instruction, by taking an action when not instructed by the client to do so, by delaying or failing to handle a matter entrusted to the attorney's care by the client, or by not using an attorney's ordinary care in preparing, managing, and presenting litigation that affects the client's interests. *Zidell v. Bird*, 692 S.W.2d 550, 553 (Tex. App.—Austin 1985, no writ).

*Kimleco*, 91 S.W.3d at 923–24 (finding breach of fiduciary duty claims alleging attorney negligently failed to timely designate qualified expert and negligently misled plaintiffs that another lawsuit was ready for trial, were really malpractice claims and were barred by the statute of limitations); *see Murphy*, 241 S.W.3d at 692–93. Also, the elements of actionable fraud are: (1) a material representation, (2) that is false, (3) that the speaker knew was false when made, (4) that he

20

made with the intention that it be acted upon by the other party; (5) that the party acted in reliance on it, and (6) damages. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992).

The Isaacses' complaints regarding breach of fiduciary duty and constructive fraud concern the conflict of interest, failure to disclose the dual nature of the representation and possible consequences, and failing to obtain informed consent and waiver of any conflicts of interest. These claims do not, "without more, allege the type of dishonesty or intentional deception that will support a breach-of-fiduciary-duty claim," or demonstrate the element culpability required to meet the elements of fraud. *Murphy*, 241 S.W.3d at 699. There is no allegation or evidence presented that Schleier was anything other than mistaken in his belief that he was only representing the Isaacses in the transaction.[11]

As in *Kimleco*, we find that the Isaacses' claims "can . . . be characterized as legal malpractice" claims. 91 S.W.3d at 924; *Won Pak v. Harris*, 313 S.W.3d 454, 456–58 (Tex. App.—Dallas 2010, pet. denied) (finding breach of fiduciary duty, misrepresentations, and aiding and abetting fraud were all malpractice claims against attorney who drafted formation of entity

---

[11]While the "Texas courts do not allow plaintiffs to convert what are really negligence claims into claims for fraud," they "have allowed clients to assert fraud claims against lawyers when the specific allegations of fraud centered on the fees charged for the lawyers' services." *Murphy*, 241 S.W.3d at 693 (claim that lawyers gave material false and misleading information inducing plaintiff's settlement of claims due to defendant's counterclaim against co-plaintiff was a negligence claim) (citing *T.O. Stanley Boot Co.*, 847 S.W.2d at 222; *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.—Dallas 1995, writ denied)). There is no such complaint here.

21

documents for six clients because claims centered upon conflicts of interest and failure to disclose conflicts focused on quality or adequacy of representation).

The Isaacses' points of error complaining that their claims are not malpractice claims are overruled. The two-year statute of limitations applies.

## IV. Tolling Provisions Asserted Do Not Apply

### A. Discovery Rule and Fraudulent Concealment

A plaintiff suffers legal injury when facts come into play which would authorize seeking a judicial remedy. *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). Because Texas applies the discovery rule to legal malpractice claims, a cause of action for legal malpractice accrues when the nature of the injury is discovered or should have been discovered in the exercise of reasonable care and diligence.[12] *Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex. 1988).

The discovery rule applies in cases of fraud, fraudulent concealment, and in other cases where the nature of the injury is inherently undiscoverable. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997*)*. The doctrine of fraudulent concealment provides that where a defendant is under a duty to make a disclosure, but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of

---

[12]Although we previously explained that the Harrison County claims were separately asserted against the Isaacses and Schleier, and it has not been shown how the admission of dual representation harmed the Isaacses considering Bishop's claims and the jury charge in the Harrison County case, we assume that some injury occurred for the purposes of this exercise.

reasonable diligence. *Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The Isaacses argue that their claims were fraudulently concealed by Schleier and should not have been discovered until his testimony agreeing to the dual representation.

However, the estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Id.* Schleier and the firm claim that the Isaacses knew of the allegations of the dual representation in 2002. Because Schleier and the firm moved for summary judgment on the affirmative defense of limitations and the Isaacses assert the discovery rule, the Isaacses must also negate the application of the discovery rule. *Rhone–Poulenc*, *Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

In John Isaacs' June 15, 2004, deposition, he acknowledged that Schleier represented both parties in the transaction. While Schleier sought to represent the Isaacses in initiating foreclosure proceedings, a letter was sent from Bishop's attorney to Schleier on September 30, 2002, pointing out the dual representation and asking for Schleier's withdrawal. With respect to this letter, John Isaacs testified to the following on September 3, 2009:

> Q. And part of that letter says that, Mr. Schleier, you shouldn't be handling this for Mr. Isaacs because you were handling this transaction for both of them, Mr. Bishop and Mr. Isaacs, you've got a conflict of interest. Do you remember that part of the letter?
>
> A. Oh, yes.

23

Q. Okay. So you knew that as of the time of that letter, Bishop's claiming, wait a minute, Rob Schleier, you did something wrong, you're representing both of us?

A. Well, I didn't -- I didn't think he done anything wrong.

Q. Yes, sir, but --

A. I don't think he really -- whatever, you know.

Q. Right, but you knew that Mr. Craig was making that claim on behalf of Mr. Bishop, that Mr. Schleier had done something wrong in representing both of you and he shouldn't now be representing just you?

A. Yes, sir.

The evidence that John Isaacs knew of the allegation of dual representation around September 30, 2002, was corroborated later in this deposition, and in Schleier's written response to the allegation, which copied the Isaacses on October 2, 2002. By the time Bishop filed suit shortly thereafter, the Isaacses had hired Clifton "Scrappy" Holmes to represent them. Schleier and the firm argue that the Isaacses, through reasonable diligence, should have known of the nature of the dual representation by this time.[13]

---

[13]In an amended affidavit, John expounded his answer in the 2004 deposition that he knew Schleier was also representing Bishop. He says,

Only at the time of the final arguments, when the Judge was reading the Trial Court's Charge to the jury prior to their deliberations, did by [sic] wife and I discover that the sudden and abrupt change in the testimony by Attorney Schleier set forth herein (admitting, for the very first time, that the dividing of the legal fees alone was sufficient evidence to establish an attorney-client relationship between himself and Bishop, while he was also acting as our attorney in the real estate transaction) would result in a substantial, sudden, and certainly adverse "duty to disclose" instruction to the jury

The Isaacses argue that this evidence does not establish, as a matter of law, that their cause of action accrued in 2002. They point out that even as of August 5, 2004, Schleier testified "my client was Johnny Isaacs. It was not Chuck Bishop's [sic]." Schleier's belief stemmed from Bishop's representation that he had another attorney who would review the sale documents. Schleier continued to claim, even as of this date, that he was only representing the Isaacses in the transaction. Because Schleier continued to deny the nature of the dual representation until his trial testimony, the Isaacses contend that a fact question exists as to when the cause of action accrued.

Again, Schleier and the firm must prove "as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury." *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.—Dallas 1995, writ denied) (citing *Am. Med. Elecs., Inc. v. Korn*, 819 S.W.2d 573, 576 (Tex. App.—Dallas 1991, writ denied)). If they "cannot do so, a fact question exists about when the limitations period began to accrue." *Id.* (citing *Clade v. Larsen*, 838 S.W.2d 277, 282 (Tex. App.—Dallas 1992, writ denied)).

Here, we find that Schleier has met that burden. "Discovery occurs when a plaintiff has knowledge of such facts, conditions, or circumstances as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action." *Trousdale*, 261 S.W.3d at 234. At a minimum, the Isaacses knew of the facts and the complaint of dual representation in

---

which, in my opinion at the time and in the opinion of my trial counsel, dramatically altered the exposure my wife and I had to the claims of "fraud-in-the-inducement."

25

October 2002 when it was asserted by Bishop in his petition. Knowledge of these facts should have prompted inquiry, and the Isaacses should have known through reasonable diligence (i.e., asking their attorney to research the issue), that the allegations made in the Bishop petition, if true, would give rise to legal injury. Consequently, we do not find that the discovery rule or fraudulent concealment applies.

### B. The *Hughes* Tolling Provision Is Inapplicable

The *Hughes* tolling provision provides that in certain types of legal malpractice actions, the statute of limitations may be tolled until the malpractice litigation is final. *Mullin*, 168 S.W.3d at 291 (citing *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119 (Tex. 2001)). *Hughes* decided the "proper application of the statute of limitations in a legal malpractice case when the attorney allegedly commits malpractice while providing legal services in the prosecution or defense of a claim which results in litigation." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 155 (Tex. 1991). Because the attorney's malpractice during litigation could force his client to take inconsistent postures, the court allowed for a tolling of the statute of limitations on the malpractice action until all appeals in the underlying claim were exhausted. *Id.* at 156–57. The reasoning for the tolling is that the outcome of the malpractice suit depends on the outcome of the first litigation, since injury or damage is an element of the claim for legal malpractice. *Id* at 157. As with the discovery rule, the defendant moving for summary judgment bears the burden of showing that the *Hughes* rule has not tolled limitations. *Mullin*, 168 S.W.3d at 291 (citing *Nunez v. Caldarola*, 56

S.W.3d 812, 815 (Tex. App.—Corpus Christi 2001, no pet.)). The Isaacses argue that because the first *Isaacs* case was not resolved by this Court until after the filing of their petition, the statute of limitations should be tolled. We disagree.

Several cases have held that the *Hughes* tolling provision does not apply to attorney malpractice claims based on transactional work. *Mullin*, 168 S.W.3d 288, 292–93 ("Because the negligent drafting and/or review of the agreements . . . , if any, is not attorney malpractice committed during 'the prosecution or defense of a claim that results in litigation,' the alleged malpractice in this case is not within a category of legal malpractice cases encompassed within the *Hughes* definition, and, thus, the *Hughes* rule does not apply."). Yet, the Isaacses argue that the malpractice was the misrepresentation of the dual representation, and that because the misrepresentation was revealed at trial, the *Hughes* tolling provision applies. They rely heavily on *Gulf Coast Investment Corp. v. Brown*, 821 S.W.2d 159, 160 (Tex. 1991). In that case, an attorney's notice of foreclosure was not properly drafted. Plaintiff asserted wrongful foreclosure against the Company who hired the attorney, and won. Thereafter, the Company sued the attorney for malpractice arising from the deficient draft. The court in *Gulf* held that malpractice occurring outside of litigation can toll the statute of limitations where it resulted "not in an appeal on the underlying claim, but in a wrongful foreclosure action by a third-party against the client." The rationale in *Hughes* was expanded because the Company's position in the first suit in

27

defending against wrongful foreclosure would be inconsistent with the malpractice claim alleging that the notice was deficient.

Again, *Hughes* requires that the attorney allegedly commits malpractice *while* providing legal services in the prosecution or defense of a claim which results in litigation. *Hughes* assumes the attorney at trial is representing the client in litigation at the time that the malpractice is committed. Here, Schleier and the firm no longer represented the Isaacses at trial. Further, the malpractice must be committed in the prosecution or defense of the claim which results in litigation. The misguided advice that there was no dual representation was committed prior to litigation as evidenced by the September 2002 letter to Bishop's attorney.

Distinguishing *Gulf*, it is unclear how Schleier's admission would require the Isaacses to take inconsistent positions. In order for Bishop to be successful against the Isaacses on this claim of fraud, he would have to prove that the Isaacses knew Schleier's denial of dual representation was false. The Isaacses were not attorneys and were not charged with the knowledge of the rules of conduct for lawyers; instead, they admittedly relied on Schleier to make such a determination. Even when Schleier belatedly announced that he represented both parties, the Isaacses could have continued to maintain that they had no knowledge of that and could not be charged with such knowledge when Schleier had consistently denied such dual representation. The Isaacses allege that by their ignorance of Schleier's attorney-client relationship with both parties, they were harmed. That fact alone did not cause injury to the Isaacses. A finding of an attorney-client

28

relationship between Bishop and Schleier was important to Bishop because he could not have recovered for legal malpractice otherwise; for the same reason, it was important to Schleier. The Isaacses were not required to take any position on that issue in the trial with Bishop, and such a finding in itself did not have a bearing on the Isaacses' liability to Bishop. We do not believe the Isaacses were forced into taking inconsistent positions, and the *Hughes* tolling provision does not apply. This last dispositive point of error is overruled.

We find that the Isaacses' claims were subject to the two-year malpractice statute of limitations, which began to accrue in October 2002 with the filing of Bishop's petition alleging dual representation. Because the Isaacses did not file suit in this case until 2005, and no tolling provisions asserted applied, we conclude that the Isaacses' claims were barred. Therefore, the trial court properly granted the take-nothing summary judgment.

## V.    Conclusion

We affirm the trial court's judgment.


                                         Jack Carter
                                         Justice


Date Submitted:        October 19, 2011
Date Decided:          December 7, 2011