ACCEPTED
06-14-00020-cv
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
1/5/2015 3:35:28 PM
DEBBIE AUTREY
CLERK

No. 06-14-00020-CV

_____

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

1/5/2015 3:35:28 PM

DEBBIE AUTREY
Clerk

In the Court of Appeals of Texas
Sixth District
Texarkana, Texas

_____

WENDOLYN MESSNER, DEPENDENT ADMINISTRATOR
*Appellant*

v.

MARK L. BOON, BOON SHAVER ECHOLS COLEMAN & GOOLSBY, P.L.L.C.,
*Appellees*

_____

On Appeal from the
County Court at Law of Rusk County, Texas
Hon. Chad Wes Dean
Trial Court Cause No. 02-043 A

_____

APPELLANT'S MOTION FOR REHEARING

_____

PAUL W. TURNER
Texas Bar No. 24037619
400 S. Alamo, Suite A
Marshall, Texas 75670
(903) 935-0135 (phone)
(903) 935-0235 (facsimile)
pturner@thelawofficeofpwt.com
COUNSEL FOR APPELLANT

1

# TABLE OF CONTENTS

Cover ...................................................................................................... 1

Table of Contents ................................................................................. 2

Index of Authorities ............................................................................. 3

Issues Presented for Review ................................................................. 5

Misstatements of Facts and Law in the Court's Opinion ...................... 6

Argument ............................................................................................. 14

Prayer .................................................................................................. 21

Certificate of Compliance and Certificate of Service ........................... 22

Appendix Table of Contents ................................................................. 23

# INDEX OF AUTHORITIES

## CASES

*Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*,
192 S.W.3d 780, 787 (Tex. 2006) ...................................................... 11, 18-19

*Borissoff v. Taylor & Faust*,
15 Cal. Rptr.3d 735, 739 (Cal. 2004) ............................................................. 19

*Bookman v. Davidson*,
136 So. 3d 1276, 1278-80 (Fla. 1st DCA 2014) .............................................. 19

*Brightwell v. Barlow, Gardner, Tucker & Garsek*,
619 S.W.2d 249, 251 (Tex. Civ. App.—Fort Worth 1981, no writ) ................ 12

*Isaacs v. Schleier*,
356 S.W.3d 548, 559 (Tex. App.—Texarkana 2011, pet. denied) ........ 14-15

*Hall v. Huff,*
957 S.W.2d 90, 95 (Tex. App.—Texarkana 1997, pet. denied) ....................... 16

*Huie v. DeShazo*,
922 S.W.2d 920, 925 (Tex. 1996) .................................................................. 12

*Limestone Prods. Distrib., Inc. v. McNamara*,
71 S.W.3d 308, 311 (Tex. 2002) ...................................................................... 9

*NationsBank of Tex., N.A. v. Akin, Gump, Hauer & Feld, L.L.P.*,
979 S.W.2d 385, 391 (Tex. App.—Corpus Christi 1998, pet. denied) ............ 12

*Overton v. Bengel*,
139 S.W.3d 754, 759 (Tex. App.—Texarkana 2004, no pet.) ......................... 12

*Read v. United States ex rel. Department of Treasury*,
169 F.3d 243, note 8 (5th Cir. 1999) ................................................................ 6

*Smith v. O'Donnell*,
288 S.W.3d 417, 420-21 (Tex. 2009) .................................................... 6, 16-18

*Vinson & Elkins v. Moran*,
   946 S.W.2d 381, 387, 398
   (Tex. App.—Houston [14th Dist.] 1997, writ dism'd) .............................. 11, 19

**STATUTES**

I.R.C. §2010 ................................................................................................ 6

I.R.C. §2056 ................................................................................................ 6

I.R.C. §2505 ................................................................................................ 6

Tex. Estates Code §351.054 ...................................................................... 17

Tex. Estates Code §351.151 ...................................................................... 17

Tex. Estates Code §361.153 ...................................................................... 18

Tex. Prob. Code §224 ...................................................................... 5, 11, 17-20

Tex. Prob. Code §233 ................................................................................ 17

Tex. Prob. Code §233A .............................................................................. 17

**SECONDARY SOURCES**

American College of Trust and Estate Counsel,
   Commentaries on the Model Rules of Professional Conduct
   (4th ed., 2006), 1.13 ............................................................................. 12

Julie E. Bennett, "You Do Not Represent the Estate,"
   Minnesota Lawyer (September 7, 2009) ................................................ 12

Elias Clark, et al.,
   Cases and Materials on Gratuitous Transfers: Wills, Intestate Succession,
   Trusts, Gifts, Future Interests and Estate and Gift Taxation
   (West Group 1999), p. 845, 897 ............................................................ 6

## ISSUES PRESENTED FOR REVIEW

1. The Court did not address the contention of Appellant Wendolyn Messner, Dependent Administrator ("Wendolyn") that Appellee Mark L. Boon ("Boon") breached his fiduciary duty when he gave false testimony at his deposition in an attempt to mitigate his failure to marshal the assets of Trust C for the benefit of the estate of Delbert M. Messner ("Delbert") and to assist his friend, Jim Hughey.[1]

2. Can Wendolyn bring a claim against Boon on behalf of Delbert's estate for legal malpractice that occurred after Delbert's death and during the administration of the prior personal representative of Delbert's estate, Juanita Bengel ("Bengel")?[2]

3. The Court did not address the argument of Wendolyn that pursuant to Section 224 of the Texas Probate Code, the rights and powers of the original personal representative of Delbert's estate, Bengel, flowed to Wendolyn as successor personal representative.[3]

---

[1] C.R. 26-28, 158; Appellant's Brief, p. 39-40.
[2] Wendolyn is not waiving her claim that the basis for the Court's decision was improper because this ground for summary judgment was not made in the motions for summary judgment.
[3] C.R. 156-57; Appellant's Brief, p. 37-38.

5

## MISSTATEMENTS OF FACTS AND LAW IN THE COURT'S OPINION

There are several misstatements facts and law that need to be corrected in the Court's Opinion. To facilitate communication, Wendolyn shall use the abbreviated terms found in the Opinion (e.g., "University" means "LeTourneau University," "*Smith*" means "*Smith v. O'Donnell*, 288 S.W.3d 417 (Tex. 2009)").

On page 3 of its Opinion, the Court states that "Decedent's Trust B … was designed to take advantage of the available marital deduction." Later, on page 4, the Court states that "the marital deduction in 2000 was $675,000.00." These two statements are incorrect. According to the Statement of Facts in Appellant's Brief, which Boon conceded as being "substantially correct,"[4] Trust B "was to contain property worth $675,000.00, the exclusion amount for estate tax purposes in 2000."[5] The exclusion amount is the value of the cumulative taxable transfers that a person may make without incurring a tax on the transfers.[6] The exclusion amount is not the same as the marital deduction. The marital deduction is unlimited now and was unlimited in 2000.[7] In other words, a decedent can transfer as much property as she wishes to her spouse without incurring any tax liability.[8] The Court

---

[4] Boon Appellees' Brief, p. 3.
[5] Appellant's Brief, p. 12.
[6] I.R.C. §§ 2010, 2505; Elias Clark, et al., Cases and Materials on Gratuitous Transfers: Wills, Intestate Succession, Trusts, Gifts, Future Interests and Estate and Gift Taxation (West Group 1999), p. 845.
[7] I.R.C. §2056; Clark, Gratuitous Transfers, p. 897; C.R. 334-35.
[8] I.R.C. §2056(a). *Read v. United States ex rel. Department of Treasury*, 169 F.3d 243, note 8 (5th Cir. 1999); C.R. 217.

needs to modify its opinion to show that Trust B was designed to take advantage of the exclusion amount which was $675,000.00 in 2000.

Wendolyn believes that the Court should clarify the undisputed meaning of the acronym "GPOA" on page 6 of its Opinion. GPOA means "general power of appointment."[9]

On page 6 of its Opinion, the Court states that Boon testified at some point in his deposition that in 2005 Bengel wrote a $293,241.77 check to the University, and this check "was for Trust C assets." Later, on page 23 of its Opinion, the Court repeats its belief that "Boon testified that Bengel herself wrote a check to the University for Trust C assets." Boon did not testify that the check for $293,241.77 "was for Trust C assets."[10] Moreover, any such testimony would have been erroneous since the value of the assets assigned to Trust C was $188,586.00 and not $293,241.77.[11] Consequently, the Court should strike any statements in its Opinion that Boon testified Bengel wrote a check in the amount of $293,241.77 to the University for Trust C assets.

On page 8 of its Opinion, the Court states: "On May 16, 2011, the University, Hughey, and successor trustee, Ben March, filed suit against all the beneficiaries of Delbert's estate, among others …" This statement is incorrect.

---

[9] Appellant's Brief, p. 15; C.R. 230.
[10] C.R. 229-31, 294, 304-05.
[11] C.R. 227, 304, 312; Appellant's Brief, p. 13.

Only the University filed suit in May 2011, as stated in the Statement of Facts in Appellant's Brief.[12] Jim Hughey, trustee, and Ben March, as successor trustee, later joined or were joined to the lawsuit.[13]

Boon has alleged that the beneficiaries of Delbert's estate filed counterclaims in the LeTourneau Litigation that are substantially identical to the claims that Wendolyn has brought in this litigation.[14] Boon's factual allegation has no evidentiary support, as Wendolyn pointed out in response to the summary judgment motions and in her brief.[15] There is no evidence in the record showing that all of the beneficiaries brought counterclaims that are substantially identical to Wendolyn's claims.[16] To underscore this point, Wendolyn showed it was impossible for all of the beneficiaries to have brought counterclaims in the LeTourneau Litigation because one of the beneficiaries, Masonic Lodge, did not even make an appearance in that lawsuit.[17] But the Court appears to have misinterpreted Wendolyn's observations because on page 8 of its Opinion, the Court erroneously states: "In response to the … [LeTourneau Lawsuit], the beneficiaries of Delbert's estate, except for the Masonic Lodge … countersued, arguing that Hughey never distributed the assets in Trust A and Trust C to

---

[12] Appellant's Brief, p. 16-17; C.R. 26, 213-14, 285-86, 296-97.
[13] C.R. 94, 120.
[14] C.R. 43-44, 131, 133; Boon Appellees' Brief, p. 28-29.
[15] C.R. 152, Appellant's Brief, p. 17, 33-34.
[16] C.R. 152; Appellant's Brief, p. 17, 33-34.
[17] Appellant's Brief, p. 17; C.R. 38, 85, 94-96, 116-23, 152, 294-95.

Delbert's beneficiaries and that he had instead used all of the assets to fund the Delbert and Barbara Messner Scholarship Trust …" The evidence in the record shows that *only* Michele and Oil Field Girls, Ltd. filed this type of counterclaim in the LeTourneau Lawsuit.[18] There is no evidence in the record showing that Michael T. Messner, the Masonic Home for Aged Mason, the Masonic Home and School of Texas, or the Perritte Memorial Methodist Church brought counterclaims in the LeTourneau Litigation that are substantially the same as the ones that Wendolyn has brought in this litigation. Moreover, the Court can reasonably infer that Michael did not bring such counterclaims because he did not join Michele and Oil Field Girls, Ltd. (which succeeded to only Michael's mineral interests and not to any other property he inherited from Delbert's estate)[19] in the pleading in which his co-defendants asserted these counterclaims even though he was represented by the same attorney.[20]Therefore, the Court should correct the statements made on pages 8 and 10 of its Opinion that Wendolyn's claim in this litigation are "similar to the counterclaims filed by the LeTourneau Defendants."

On pages 8-9 of its Opinion, the Court states: "After the LeTourneau Defendants filed an expert report concluding that Delbert had the general power of appointment and that it was validly exercised, all remaining claims arising out of

---

[18] C.R. 85-91, 95-96, 152; Appellant's Brief, p. 17, 33-34.
[19] Appellant's Brief, p. 17, 33; C.R. 97-98, 295.
[20] *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); C.R. 85-91, 297.

the LeTourneau lawsuit were settled." There is nothing in the record showing that the LeTourneau Defendants filed such an expert report. There is, however, an expert report of Ronald R. Cresswell.[21] But this report was prepared only for Samson Lonestar, LLC, one of the defendants in the LeTourneau Litigation.[22] Finally, there is nothing in the record showing that the report, prepared in October 2012,[23] somehow precipitated or was a major factor contributing to the Settlement of April 2013.[24]

The Court states on page 10 of its Opinion that Wendolyn "hired the same attorney that represented the LeTourneau Defendants." This statement is wrong. Instead, the record reveals: Paul W. Turner represented only Michael, Michele, and Oil Field Girls, Ltd.;[25] E. McAlister Benchoff was the attorney for the Masonic Home for Aged Mason and the Masonic Home and School of Texas;[26] and Bill Pedersen, Jr. was the attorney for the Perritte Memorial Methodist Church.[27]

On page 19 of its Opinion, the Court states Wendolyn argued that "she stepped into Bengel's shoes as the successor **trustee** [emphasis added]." The term "trustee" is incorrect. Bengel was never a trustee of any trusts established by the

---

[21] C.R. 328-47.
[22] C.R. 328.
[23] C.R. 330.
[24] C.R. 92, 104-115.
[25] C.R. 121.
[26] C.R. 122.
[27] C.R. 123.

Trust Agreement.[28] Instead, Wendolyn has argued that she stepped into Bengel's shoes as the successor "personal representative" of Delbert's estate.[29] More importantly, for her metaphor, Wendolyn relies more on Section 224 of the Texas Probate Code as well as *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 398 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd) than *Belt*.

In its discussion of Boon's limitations defense on page 23 of its Opinion, the Court states that "Boon testified … that the [2005] accounting was available to the beneficiaries at Stringer's office." Although Boon did give such testimony,[30] this evidence was not presented at the trial court level for Wendolyn to challenge.[31] Instead, in their motions for summary judgment, Boon and Stringer did not offer any evidence to show what "accounting records were available in 2006 to review," much less any evidence to show that they were available to the beneficiaries.[32] Wendolyn pointed out this lack of evidence in her response to the Boon and Stringer's motions for summary judgment.[33] Therefore, the Court should strike its statement that the 2005 accounting was available to the beneficiaries in Stringer's office.

---

[28] C.R. 164, 188. Bengel was, however, trustee of some testamentary trusts that were terminated. C.R. 233.

[29] C.R. 156-57; Appellant's Brief, p. 37-38, note 122 (quoting for support *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 398 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd).

[30] C.R. 234.

[31] C.R. 32-33, 132.

[32] C.R. 39.

[33] C.R. 148.

On page 24 of its Opinion, the Court states: "There is nothing in the record showing that Boon, who represented Bengel, was also representing the estate …" This statement seems to be saying that Delbert's estate could have been Boon's client just as Bengel was his client. Under Texas law, an attorney represents the personal administrator of the estate and not "the estate,"[34] although the language in some court opinions would suggest to the contrary—"the attorney for the estate"[35] or "the attorney … who now represents the estate."[36] Consequently, no evidence could be submitted showing that Boon was providing legal services to the estate as well as Bengel.

There is a second problem on page 28 of the Opinion. The Court writes: "Boon … argues that the estate was not included as a party to the LeTourneau [L]awsuit because '[i]t has long been settled that the 'estate' of a decedent is not a legal entity and may not sue or be sued as such.'" Boon has never made this argument. Nor has Wendolyn or Stringer. Instead, in her response to the motions for summary judgment, Wendolyn cited the rule that an estate cannot sue or be sued in response to Boon and Stringer's motions for summary judgment in which

[34] American College of Trust and Estate Counsel, Commentaries on the Model Rules of Professional Conduct (4th ed., 2006), 1.13; *Huie v. DeShazo*, 922 S.W.2d 920, 925 (Tex. 1996); *NationsBank of Tex., N.A. v. Akin, Gump, Hauer & Feld, L.L.P.*, 979 S.W.2d 385, 391 (Tex. App.—Corpus Christi 1998, pet. denied); Julie E. Bennett, "You Do Not Represent the Estate," Minnesota Lawyer (September 7, 2009).
[35] *Overton v. Bengel*, 139 S.W.3d 754, 759 (Tex. App.—Texarkana 2004, no pet.).
[36] *Brightwell v. Barlow, Gardner, Tucker & Garsek*, 619 S.W.2d 249, 251 (Tex. Civ. App.—Fort Worth 1981, no writ).

they had argued that "the Estate," (i.e., Delbert's estate) should have learned of its claims against them by 2006.[37] Consequently, the Court should remove this portion of its Opinion in which it purports to recount an argument made by Boon.

---

[37] C.R. 38-40, 43-44, 147, 152.

## 1. Boon breached his fiduciary duty by giving false testimony.

On pages 11 and 12 of its Opinion, the Court points out that Wendolyn has alleged two grounds for finding that Boon had breached his fiduciary duty. First, a jury could find that he gave false testimony at his deposition when he stated that he had always been concerned about the validity of Delbert's power of appointment, though he never expressed this concern to anyone and, understandably due to the plain language of the Trust Agreement, had difficulty giving a good reason for this concern.[38] Alternatively, a jury could find that Boon breached his fiduciary duty by not disclosing this concern to Delbert or Bengel.[39] The Court addressed the alternative grounds for Boon's alleged breach of fiduciary duty, Boon's failure to disclose his concerns, and found that this theory of liability does not "allege the type of dishonesty or intentional deception that will support a breach-of-fiduciary-duty claim."[40] But the Court did not address the other grounds alleged by Wendolyn for finding that Boon had breached his fiduciary duty, namely, Boon's false testimony at his deposition.

The allegation that Boon lied at his deposition involves the type of dishonesty or intentional deception that will support a claim for breach of fiduciary

---

[38] C.R. 26-27, 54-55, 157-58; 246, 277, 342; Appellant's Brief, p. 18, 20, 39.
[39] C.R. 26-27, 54-55, 157-58, 277; Appellant's Brief, p. 20, 39.
[40] Opinion, p. 14-18 (citing *Isaacs v. Schleier*, 356 S.W.3d 548, 559 (Tex. App.—Texarkana 2011, pet. denied).

duty.[41] Moreover, by giving testimony designed to create the impression that Delbert might not have had a power of appointment over Trust C, Boon also engaged in self-dealing at the expense of Delbert, his former client.[42] In other words, he simultaneously tried to minimize his fault in not obtaining the assets of Trust C for Delbert's estate[43] and frustrated the explicit instruction of Delbert that he wanted as little trust property to go to the University and as much to go to the beneficiaries of his estate.[44] Finally, this false testimony supported the claim of his personal friend, Jim Hughey, that the University, Hughey's employer, was the ultimate beneficiary of the assets in Trust C.[45] In short, Wendolyn has alleged that Boon lied in order to put his own interest ahead of that of his former client, Delbert. The Court's Opinion fails to address Wendolyn's initial allegation supporting a claim for breach of fiduciary duty.

2. **Wendolyn can bring claims against Boon on behalf of Delbert's estate for legal malpractice that occurred after Delbert's death and during Bengel's administration.**

On page 20 of its Opinion, the Court states that "claims alleging that Boon failed to properly advise Bengel in her role as administrator of Delbert's estate are not based on injury to Delbert … instead, the injury, if any, was to Bengel." Then,

---

[41] Opinion, p. 17; *Isaacs v. Schleier*, 356 S.W.3d 548, 559 (Tex. App.—Texarkana 2011, pet. denied).
[42] *Isaacs v. Schleier*, 356 S.W.3d 548, 559 (Tex. App.—Texarkana 2011, pet. denied).
[43] C.R. 27, 55, 158, 251, 276; Appellant's Brief, p. 39.
[44] C.R. 25, 53, 202-03, 217; Appellant's Brief, p. 13.
[45] C.R. 157-58; Appellant's Brief, p. 15, 20.

in note 6, also on page 20 of the Opinion, the Court mentions "the trial court's grant of summary judgment on claims asserted against Bengel." There is no evidence in the record showing an injury or damages to Bengel or that any claims were ever asserted against Bengel,[46] whom the Court observed could not even be sued for negligence due to the exculpatory clause in Delbert's will that Boon drafted.[47] Instead, there is much evidence showing that while Boon was representing Bengel as the administrator of Delbert's estate, he was negligent in his admitted duty of assisting Bengel in marshaling some of the assets of Delbert's estate, specifically Trusts A and C, thereby causing injury or damages to Delbert's estate.[48] Finally, although Boon raised a straightforward privity defense (i.e., Wendolyn could not sue Boon because he was never her attorney), the Court's novel basis for affirming the trial court's summary judgment (i.e., Wendolyn cannot sue Boon because any negligence on his part was an injury only to Bengel) is improper because it was not raised at the trial level or even in Boon's brief.[49]

The language found on page 20 of the Opinion appears to be due to the Court's misreading of *Smith*. According to the Court, although Bengel and Wendolyn can sue Boon on behalf of Delbert's estate for a negligent act that occurred during Delbert's life, only Bengel (or the personal representative of

---

[46] C.R. 22-29, 50-57.
[47] Opinion, p. 27; C.R. 142-43.
[48] C.R. 251, 275-77, 337-42.
[49] C.R. 133-35; Appellee Boon's Brief, p. 5-8; *Hall v. Huff*, 957 S.W.2d 90, 95, note 11 (Tex. App.—Texarkana 1997, pet. denied).

16

Bengel's estate) can sue Boon for a negligent act that occurred after his death and during her administration provided Bengel (or her estate) suffers damages.[50] Although the second fact pattern is what happened in *Smith*,[51] the Texas Supreme Court does not state or even imply in its opinion that this inefficient, domino-like process is procedurally necessary in order for a personal representative or his successor to bring a claim on behalf of the estate that is directly injured or damaged by a negligent act. In fact, under the Court's analysis on page 20 of its Opinion, anyone who caused damages to Delbert's estate during Bengel's administration (at least anyone with whom Bengel contracted including Stringer) could not be sued by a successor personal representative of Delbert's estate. But Sections 224, 233, 233A of the Texas Probate Code give personal representatives and their successors the authority "to collect all claims and debts due the estate" regardless of whether the wrongful conduct giving rise to the claim occurred during the decedent's life or after death … and  without waiting for a beneficiary to sue or settle with them.[52] In distinguishing claims that a personal representative may bring for damages or harm to the estate based on when the negligent act occurred (before or after the decedent's death), the Court ignores the near identical interests of the decedent and his estate: "An estate's interests … mirror those of the

---

[50] Opinion p. 20, note 6.
[51] *Smith v. O'Donnell*, 288 S.W.3d 417, 420-21 (Tex. 2009).
[52] Tex. Prob. Code §§233, 233A (now Tex. Estates Code §§351.054, 351.151).

decedent"[53] and "a decedent's interests should mirror those of his estate."[54] In summary, the statements on page 20 of the Opinion reflect an improper and novel view of Texas law, which explains why neither Boon nor Stringer raised it in the trial court.[55]

3. **Section 224 of the Texas Probate Code gives Wendolyn the right to pursue claims for legal malpractice against Boon that Bengel herself could have brought.**

On page 18-21 of its Opinion, the Court discusses Boon's argument that Wendolyn's lack of privity bars her claims for negligence against him. To defeat Boon's argument, the Court states that Wendolyn "cites to *Smith v. O'Donnell*, 288 S.W.3d 417, 419 (Tex. 2009)." But Wendolyn never cited to or discussed *Smith*, and neither did Boon.[56] More importantly, the Court never considered her principal argument for overcoming Boon's privity defense: Section 224 of the Texas Probate Code.[57] According to that statute, a successor personal representative, like Wendolyn, has "all rights, powers, and duties of his predecessor," unless otherwise specified in the decedent's last will and testament.[58] Moreover, in her brief, Wendolyn cited to a Texas case in which the Fourteenth Court of Appeals interpreted the statute to mean that a successor personal representative could sue a

---

[53] *Smith v. O'Donnell*, 288 S.W.3d 417, 421 (Tex. 2009).
[54] *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 787 (Tex. 2006).
[55] C.R. 30-48, 133-35.
[56] C.R. 133-35, 155-57; Appellant's Brief, p. 6; Appellee's Brief, p. v.
[57] C.R. 155-57; Appellant's Brief, p. 36-38, notes 122-24.
[58] Tex. Prob. Code §224 (now Tex. Estates Code §361.153); C.R. 156; Appellant's Brief, p. 37, Appendix Page 80.

law firm for legal malpractice that had occurred during a predecessor's administration of an estate.[59] Wendolyn also noted that the California Supreme Court relied on a statute similar to Section 224 of the Texas Probate Code to overcome a law firm's defense of lack of privity.[60] Very recently, in May 2014, a Florida appellate court also held that a statute similar to Section 224 of the Texas Probate Code overcame an attorney's defense of lack of privity to a malpractice claim brought by a successor personal representative.[61] Finally, as the Texas Supreme Court noted in *Belt*, the rationale for the privity barrier "does not apply when an estate's personal representative seeks to recover damages incurred by the estate itself."[62] In this case, Wendolyn seeks to recover damages incurred by Delbert's estate itself due to Boon's negligence;[63] and she does so without relying on extrinsic evidence but on the documents prepared by Boon himself and his own admissions at his deposition.[64] In summary, the Court should address Wendolyn's counter-argument based on Section 224 of the Probate Code and reconsider its

---

[59] Appellant's Brief, notes 122, 128; *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 387, 398 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd) (noting that although not assignable, legal malpractice claims passed from the executors, who had hired Vinson & Elkins to assist them in administering an estate, to a successor representative because the successor "stepped into the shoes" of his predecessors pursuant to Section 224 of the Texas Probate Code).

[60] C.R. 156; Appellant's Brief, notes 126-27; *Borissoff v. Taylor & Faust*, 15 Cal. Rptr.3d 735-37 (Cal. 2004) (citing Section 8524(c) of the California Probate Code).

[61] *Bookman v. Davidson*, 136 So. 3d 1276, 1278-80 (Fla. 1st DCA 2014) (citing Section 733.614 of the Florida Statutes).

[62] *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 787 (Tex. 2006).

[63] C.R. 53-56.

[64] C.R. 141-43, 202-22, 217, 342; Appellant's Brief 13-14.

holding that Wendolyn cannot bring claims against Boon for legal malpractice occurring during Bengel's administration.

## PRAYER

For the reasons states in this motion, Wendolyn asks the Court to grant this motion for rehearing, withdraw its opinion, correct its misstatements of law and facts, address her argument concerning Boon's breach of fiduciary duty for giving false testimony at his deposition, and address her argument that Section 224 of the Texas Probate Code overcomes Boon's defense of privity whose rationale does not apply in this case.

Respectfully submitted,

/s/ Paul W. Turner_____
Paul W. Turner
Texas Bar No. 24037619
400 S. Alamo, Suite A
Marshall, Texas 75670
903-935-0135 (phone)
903-935-0235 (facsimile)
pturner@thelawofficeofpwt.com
**Counsel for Appellant**

## CERTIFICATE OF COMPLIANCE

This motion for rehearing complies with Texas Rule of Appellate Procedure 9.4(i) because it contains 4,457 words (excluding the parts of the motion exempted by this rule).

Signed on January 5, 2015.

/s/ Paul W. Turner_____
Paul W. Turner

## CERTIFICATE OF SERVICE

I certify that on January 5, 2015, I served a copy of Appellant's Motion for Rehearing on counsel for Appellees listed below by electronic service and the electronic transmission was reported as complete. My email address is pturner@thelawofficeofpwt.com.

Michael L. Dunn
Smead, Anderson & Dunn
2110 Horseshoe Lane
Longview, Texas 75605
**Counsel for Appellees Mark L. Boon and**
**Boon Shaver Echols Coleman & Goolsby, P.L.L.C.**

/s/ Paul W. Turner_____
Paul W. Turner

# APPENDIX TABLE OF CONTENTS

I.R.C. §2010 ...................................................................................... 1

I.R.C. §2056 ...................................................................................... 2

I.R.C. §2505 .................................................................................... 10

Tex. Estates Code §351.054 ............................................................ 11

Tex. Estates Code §351.151 ............................................................ 12

Tex. Estates Code §361.153 ............................................................ 13

Tex. Prob. Code §224 ..................................................................... 15

Tex. Prob. Code §233 ..................................................................... 16

Tex. Prob. Code §233A ................................................................... 16

American College of Trust and Estate Counsel,
  Commentaries on the Model Rules of Professional Conduct
  (4th ed., 2006), 1.13 ................................................................... 18

Julie E. Bennett, "You Do Not Represent the Estate,"
  Minnesota Lawyer (September 7, 2009) ....................................... 22

Elias Clark, et al.,
  Cases and Materials on Gratuitous Transfers: Wills, Intestate Succession,
  Trusts, Gifts, Future Interests and Estate and Gift Taxation
  (West Group 1999), p. 845, 897 .................................................. 24