**Ronald R. HAMLIN, Appellant,**

v.

**William D. GUTERMUTH and Bracewell and Patterson, Appellees.**

No. 14–94–00110–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 1995.

Rehearing Overruled Oct. 12, 1995.

Greg White, Waco, for appellant.

John H. Buck, Randall C. Owens, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

This is an appeal from a summary judgment granted in favor of appellees, William Gutermuth and Bracewell and Patterson. Appellant, Ronald Hamlin, brought a legal malpractice action for damages allegedly caused by appellees' negligence in representing him in a business transaction and administering an escrow account. In three points of error appellant contends that the trial court erred in granting appellees' motion for summary judgment because appellees did not meet their burden as movants and material fact issues existed. We affirm.

John Turner, F. Duane Schaefer, and appellant founded Paragon Family Services, Inc., a funeral home holding corporation. Turner was the president, and appellant was in charge of identifying, negotiating, and closing the purchase of funeral homes and other funeral home holding companies. In 1990, the three shareholders decided to sell Paragon to Loewen Group, Inc., a large funeral services company based in Canada. In June of 1990, letters of intent to sell Paragon to Loewen were signed. Also, individual letters of intent for employment and non-competition were signed.

Gutermuth, a partner at Bracewell and Patterson, had represented Paragon in funeral home acquisitions and other corporate matters for several years. After the sale was negotiated and the letters of intent were signed, Schaefer, Turner, and appellant hired Gutermuth to represent Paragon as well as them individually. On September 6, 1990, Loewen advised Gutermuth, by letter, that the transaction would probably require Turner to move to Canada, and he should discuss this possibility with the sellers. Gutermuth did this.

On September 16, 1990, Turner met with appellant and Schaefer to discuss the proposed move to Canada. Gutermuth did not participate in or even know about this meeting. Turner requested three million dollars from appellant's and Schaefer's share of the proceeds to compensate him for the move to Canada. On September 18, 1990, appellant and Schaefer signed a hand written letter reflecting this reallocation of money to be dispersed from the escrow account. Gutermuth did not participate in or even know about these negotiations or the preparation of this side letter. Appellant never asked Gutermuth to read the side letter and never even apprised him of its existence. The letter and other papers were delivered to Gutermuth for safe keeping.

On October 15, 1990, the Loewen transaction closed. A Master Escrow Agreement was signed by Loewen, appellant, Turner, and Schaefer. Bracewell and Patterson was to be the escrow agent. According to the Master Escrow Agreement, a portion of the purchase price was to be kept in escrow until the three shareholders completed several pending funeral home acquisitions. In October, Loewen authorized the dispersal of $1,777,500 from the escrow account in such manner as Turner directed. Subsequently,

Turner instructed the dispersal to be made to himself. Bracewell & Patterson, as escrow agent, disbursed the funds. When appellant learned of the distribution, he was upset that it was made on the instructions of Turner alone.

On November 2, 1990, the master escrow agreement was modified so Turner, Schaefer, and appellant would be required to join with Loewen in any future dispersal instructions. The same day, appellant voluntarily joined the others in submitting written instructions to Bracewell and Patterson authorizing a second distribution of $1,673,000 to Turner. Appellant, Turner, and Schaefer thereafter disputed their respective entitlements to the amount remaining in escrow. Each hired lawyers of their own and settled the dispute by mediation in January of 1992. On October 30, 1992, appellant filed this legal malpractice suit.

Appellant argues in points of error one, two and three, that the trial court erred in granting appellees' motion for summary judgment because appellees did not meet their burden as movants and a genuine issue of material fact exists. On appeal, from the granting of summary judgment, we must determine whether the evidence establishes as a matter of law that there is no genuine issue of material fact. *Rodriguez v. Naylor,* 763 S.W.2d 411, 413 (Tex.1989). In deciding whether a genuine issue of material fact exists, the evidence must be viewed in favor of the nonmovant, resolving all doubts and indulging all inferences in his favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). A defendant as a movant must either: 1) disprove at least one element of each of the plaintiff's theories of recovery; or 2) plead and conclusively establish each essential element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979).

■ Appellant alleges causes of action for negligent legal representation. To recover in a legal malpractice case, the plaintiff must prove: (1) there is a duty owed to him by the defendant, (2) a breach of that duty, (3) the breach proximately caused the plaintiff injury, and (4) damages occurred. *Cosgrove v. Grimes,* 774 S.W.2d 662, 665 (Tex.1989).

■ Appellees presented summary judgment evidence that they did not breach their duty to appellant and there was no causation between appellant's damages and appellees' legal services. Appellees' relied on the following summary judgment evidence to support their motion: (1) excerpts from appellant's deposition and court reporter certificates verifying the deposition; (2) the affidavit of John Buck (attorney for appellees); (3) the September 18, 1990 side letter; and (4) the Master Escrow Agreement. Summary judgment evidence relied upon by appellant included: (1) excerpts from the depositions of appellant and Gutermuth; (2) the affidavit of Greg White (attorney for appellant) verifying these deposition excerpts; (3) the affidavit of appellant; and (4) the affidavit of Grant Seabolt.

Appellees contend in their motion for summary judgment that the legal services they provided, or failed to provide, for appellant did not proximately cause his damages. Specifically, appellees assert that appellant himself caused the damages; that the first dispersal of money from the escrow account to Turner could not have caused a loss of bargaining power when appellant voluntarily approved a second dispersal to Turner a few days later. Appellees rely on appellant's own deposition testimony to establish lack of causation. In his affidavit, appellant stated:

"[H]e damaged us from the standpoint that when he moved the million–8 out, that weakened our posture considerably at the time. Because if that million–8, along with what else would have been in that fund would have been there, we wouldn't be here today. We would be fighting with John Turner in a court of law, trying to determine the fairness of that value."

In order to recover damages, appellant must produce evidence from which the jury may reasonably infer that the damages sued for have resulted from the conduct of appellees. *McKnight v. Hill & Hill Exterminators,* 689 S.W.2d 206, 209 (Tex.1985). Here, there is no evidence in the record that appellant's alleged injury was caused by appellees' actions or failure to act. Appellant did not consult appellees concerning the side letter

or the disbursal of money to Turner. Furthermore, Appellant knowingly relinquished whatever bargaining power, or leverage, he might have had over Turner by voluntarily transferring money to Turner a few days after the complained of transfer. Thus, appellees clearly established that there was no causal relationship between the damages sued for, the actions of appellees, and the alleged injury suffered by appellant.

Once the movant has established a right to summary judgment, the burden shifts to the non-movant to respond and present any issues which would preclude summary judgment. *Bell v. Moores*, 832 S.W.2d 749, 751 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Appellees challenged the sufficiency of appellant's controverting evidence. They contend that Seabolt's affidavit consists entirely of legal conclusions, thus is insufficient to raise a fact issue. Grant Seabolt testified as to causation in his affidavit. He stated, "Gutermuth and B & P's [sic] failures to use ordinary care as outlined above caused Hamlin to be deprived of an effective legal right: a contractual provision requiring concurrence of all of the Management Group prior to any distributions from the escrow account."

Appellant's controverting summary judgment proof failed to raise a fact issue regarding causation of damages by appellees. The conclusory remarks in Seabolt's affidavit are not competent to controvert the summary judgment. Without sufficient reasoning or the basis for the affiants' opinions that appellees caused the damages alleged by appellant, the affidavits are mere sworn denials, and, thus, incompetent to raise a fact issue and controvert a summary judgment. Appellant has failed to present evidence raising an issue of material fact on each element of negligence challenged by appellees. Points of error one, two, and three are overruled.

The summary judgment is affirmed.

LEE and EDELMAN, JJ., concur in the result only.