ACCEPTED
06-15-00017-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/7/2015 4:51:41 PM
DEBBIE AUTREY
CLERK

No. 06-15-00017-CV

IN THE COURT OF APPEALS FOR THE
SIXTH DISTRICT OF TEXAS
AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

8/10/2015 8:34:00 AM

DEBBIE AUTREY
Clerk

BILLY FITTS AND FREIDA FITTS,

Appellants,

v.

MELISSA RICHARDS-SMITH, THE LAW FIRM OF GILLAM & SMITH, LLP,
E. TODD TRACY, AND THE TRACY FIRM, ATTORNEYS AT LAW,

Appellees.

Appeal from the 71st District Court of Harrison County, Texas
Trial Court Cause No. 14-0150

## APPELLEES' BRIEF OF MELISSA RICHARDS-SMITH AND THE LAW FIRM OF GILLAM & SMITH, LLP

Wade C. Crosnoe
State Bar No. 00783903
Sara B. Churchin
State Bar No. 24073913
Thompson, Coe, Cousins & Irons LLP
701 Brazos, Suite 1500
Austin, TX 78701
Telephone: (512) 703-5078
Fax: (512) 708-8777
E-Mail: wcrosnoe@thompsoncoe.com
E-Mail: schurchin@thompsoncoe.com

Shawn W. Phelan
State Bar No. 00784758
Thompson, Coe, Cousins & Irons LLP
Plaza of the Americas
700 N. Pearl Street, Twenty-Fifth Fl.
Dallas, TX 75201-2832
Telephone: (214) 871-8245
Telecopy: (214) 871-8209
E-Mail: sphelan@thompsoncoe.com

*Attorneys for Appellees Melissa Richards-Smith*
*and Law Firm of Gillam & Smith, LLP*

**Oral Argument Requested**

**IDENTITY OF PARTIES AND COUNSEL**

1.       Appellants/Plaintiffs Billy Fitts and Freida Fitts

         Trial and Appellate Counsel:

         Lindsey M. Rames
         Texas Bar No. 24072295
         Rames Law Firm, P.C.
         5661 Mariner Drive
         Dallas, Texas 75237
         Telephone: (214) 884-8860
         Facsimile:  (888) 482-8894
         Email: Lindsey@rameslawfirm.com

         Carter L. Hampton
         Texas Bar No. 08872100
         Hampton & Associates, P.C.
         1000 Houston Street, Fourth Floor
         Fort Worth, Texas 76102
         Telephone: (817) 877-4202
         Facsimile:  (817) 877-4204
         Email: clhampton@hamptonlawonline.com

2.       Appellees/Defendants E. Todd Tracy and The Tracy Firm, Attorneys at Law

         Trial and Appellate Counsel:

         Bruce A. Campbell
         Campbell & Chadwick
         4201 Spring Valley Road, Suite 1250
         Dallas, TX 75244
         Telephone: (972) 277-8585
         Facsimile:  (972) 277-8586

3.       Appellees/Defendants Melissa Richards-Smith and The Law Firm of Gillam & Smith, LLP

Trial Counsel:

Shawn W. Phelan
State Bar No. 00784758
Tommy M. Horan II
State Bar No. 24063938
Thompson, Coe, Cousins & Irons, L.L.P
Plaza of the Americas
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, TX 75201-2832
Telephone:  (214) 871-8245
Telecopy:  (214) 871-8209
E-Mail: sphelan@thompsoncoe.com
E-Mail: thoran@thompsoncoe.com

Appellate Counsel:

Wade C. Crosnoe
State Bar No. 00783903
Sara B. Churchin
State Bar No. 24073913
Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Telephone: (512) 708-8200
Facsimile: (512) 708-8777

# TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................................... ii

Table of Contents ......................................................................................................... iv

Index of Authorities ..................................................................................................... vi

Statement Regarding Oral Argument ........................................................................... ix

Statement of Issues........................................................................................................ x

Statement of Facts ......................................................................................................... 1

Summary of the Argument............................................................................................. 7

Argument........................................................................................................................ 9

I.      Standard of Review.............................................................................................. 9

II.     Billy and Freida's Negligence and Breach of Fiduciary Duty Claims
        Fail Because They Cannot Establish the Elements of Proximate Cause
        or Damages as a Matter of Law .........................................................................10

        A.      Principles of Contract Interpretation Governing Interpretation
                of the Release ..........................................................................................10

        B.      The Kemper Release Unambiguously Covers All Actions or
                Claims That Billy and Freida May Have Had Against George
                and Mary Fitts. ........................................................................................11

        C.      The Insuring Language of the RLI Umbrella Policy Required
                George Fitts to Be Legally Liable Before the Excess Policy
                Was Triggered ..........................................................................................12

        D.      Billy and Freida's Evidence of the Parties' Purported Intentions
                is Irrelevant and Inadmissible ................................................................15

                1.      The extrinsic evidence Billy and Freida offer is
                        inadmissible parol evidence.........................................................15

        2.      The extrinsic evidence offered by Billy and Freida is barred by the Agreement's merger clause ................................16

    E.     The Release Specifically Releases Any Claims Against George Fitts ...................................................................................17

III.   Billy and Freida's Purported Contract Defenses Are Not Properly Before This Court ...............................................................................19

IV.   Based on Billy and Freida's Own Representations and Testimony, There Was No Significant Likelihood of a Future Conflict of Interest Developing in the Course of the Toyota Litigation........................................22

V.    Billy and Freida's Fiduciary Duty Claim Is Nothing More Than an Improperly Fractured Legal Malpractice Claim.............................................23

Conclusion and Prayer ..........................................................................29

Certificate of Compliance ......................................................................31

Certificate of Service .............................................................................31

Appendix

    Kemper Release ........................................................................ Tab 1

**Cases**

*Aiken v. Hancock*,
  115 S.W.3d 26 (Tex. App.—San Antonio 2003, pet. denied) ...................... 24, 29

*Archer v. Med. Protective Co. of Fort Wayne, Indiana*,
  197 S.W.3d 422 (Tex. App.—Amarillo 2006, pet. denied) ................................27

*Barker v. Roelke*,
  105 S.W.3d 75 (Tex. App.—Eastland 2003, pet. denied) ...................... 10, 16, 17

*Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., PC.*,
  284 S.W.3d 416 (Tex. App.—Austin 2009, no pet.) ................................... 26, 27

*Cathey v. Booth*,
  900 S.W.2d 339 (Tex. 1995) ...............................................................................9

*Citizens Standard Life Ins. Co. v. Muncy*,
  518 S.W.2d 391 (Tex. Civ. App.—Amarillo 1974, no writ) ..............................21

*Coker v. Coker*,
  650 S.W.2d 391 (Tex. 1983) ..............................................................................10

*Collier v. Allstate County Mut. Ins. Co.*,
  64 S.W.3d 54 (Tex. App.—Fort Worth 2001, no pet.) ......................................13

*Cosgrove v. Grimes*,
  774 S.W.2d 662 (Tex. 1989) ..............................................................................22

*Cox v. Robison*,
  105 Tex. 426, 150 S.W. 1149, 1155 (Tex. 1912) ..............................................11

*D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*,
  300 S.W.3d 740 (Tex. 2009) ..............................................................................20

*David J. Sacks, P.C. v. Haden*,
  266 S.W.3d 447 (Tex. 2008) ..............................................................................11

*Dresser Industries, Inc. v. Page Petroleum, Inc.*,
  853 S.W.2d 505 (Tex. 1993) ..............................................................................11

*Duncan v. Cessna Aircraft Co.*,
  665 S.W.2d 414 (Tex. 1984) ..............................................................................11

*Goffney v. Rabson*,
  56 S.W.3d 186 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ................ 23, 28

*Greathouse v. McConnell*,
  982 S.W.3d 689 (Tex. App.—Dallas 2007, pet. denied) .................................... 23

*Hamlin v. Gutermuth*,
  909 S.W.2d 114 (Tex. 1995) ............................................................................. 18

*Haygood v. Hawkeye Ins. Servs. Inc.*,
  No. 12-11-00262CV, 2012 WL 1883811, at *2 (Tex. App.—Tyler, May 23
  2012, no pet.) ................................................................................................... 14

*Herrmann v. Lindsey*,
  136 S.W.3d 286 (Tex. App.—San Antonio 2004, no pet.) ................................ 20

*Isaacs v. Schleier*,
  356 S.W.3d 548 (Tex. App.—Texarkana 2011, pet. denied) ....................... 23, 24

*ISG State Ops., Inc. v. Nat'l Heritage Ins. Co., Inc.*,
  234 S.W.3d 711 (Tex. App.—Eastland 2007, pet. denied) ............................... 11

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
  341 S.W.3d 323 (Tex. 2011) ......................................................................... 10, 21

*Jampole v. Matthews*,
  857 S.W.2d 57 (Tex. App—Houston [1st Dist.] 1993, writ denied) ................... 27

*Kelley-Coppedge, Inc. v. Highlands Ins. Co.*,
  980 S.W.2d 462 (Tex. 1998) ............................................................................. 11

*Kimleco Petro., Inc. v. Morrison & Shelton*,
  91 S.W.3d 921 (Tex. App.—Fort Worth 2002, pet denied) ............................... 24

*Lopez v. Munoz, Hockema & Reed, L.L.P.*,
  22 S.W.3d 857 (Tex. 2000) ............................................................................... 20

*McMahan v. Greenwood*,
  108 S.W.3d 467 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ............. 26

*Morris v. Allstate*,
  523 S.W. 299 (Tex. Civ. App.—Texarkana 1975, no writ) ............................... 17

*Murphy v. Gruber*,
  241 S.W.3d 689 (Tex. App.—Dallas, pet. denied) ............................................ 28

*Nat'l Union Fire Ins. v. CBI Indus., Inc.*,
  907 S.W.2d 517 (Tex. 1995) ............................................................................. 15

*Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*,
  244 S.W.3d 885 (Tex. App.—Dallas 2008, pet. denied) ............................. 13, 14

*Pool v. Durish*,
848 S.W.3d 722 (Tex. App.—Austin 1992, writ denied)....................................17

*Precision Sheet Metal Mfg. Co., Inc. v. Yates*,
794 S.W.2d 545 (Tex. App.—Dallas 1990, writ denied) ...................................21

*Provident Life & Acc. Ins. Co. v. Knott*,
128 S.W.3d 211 (Tex. 2003)...............................................................................9

*Smith v. Smith*,
794 S.W.2d 823 (Tex. App.—Dallas 1990, no writ)..........................................17

*Sun Oil Co. (Delaware) v. Madeley*,
626 S.W.2d 726 (Tex. 1981)...............................................................................10

*Trousdale v. Henry*,
261 S.W.3d 221 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)....... 26, 29

*Ussery v. Hollebeke*,
391 S.W.2d 497 (Tex. App.—El Paso, 1965 writ ref'd n.r.e.) ...........................20

*Williams v. Glash*,
789 S.W.2d 21 (Tex. 1990)................................................................................20

*Won Pak v. Harris*,
313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied)............................ 25, 28

**Statutes**

Tex. Civ. Prac. & Rem. Code § 16.051 ................................................................21

**Rules**

Tex. Comm. On Prof'l Ethics, Op. 624 (2013).....................................................23

Tex. Disciplinary Rules Prof'l Conduct R. 1.06....................................................23

Tex. R. App. P. 33.1..............................................................................................19

Tex. R. Civ. P. 166..............................................................................................9, 19

## STATEMENT REGARDING ORAL ARGUMENT

Appellees Melissa Richards-Smith and the Law Firm of Gillam & Smith LLP believe oral argument would benefit the Court in its determination of the issues in this case; they therefore respectfully request oral argument.

**STATEMENT OF ISSUES**

1. The trial court did not err in granting Gillam & Smith's Motion for Summary Judgment because Billy and Freida Fitts' own concealed conduct in signing a release of claims against George Fitts negated their ability to prove causation and damages in this legal malpractice action against Gillam & Smith.

2. Furthermore, the trial court properly granted summary judgment on Appellants' breach of fiduciary duty claim because it is an impermissible attempt to recast and fracture their professional negligence claim. It is, therefore, untenable as a matter of law.

## STATEMENT OF FACTS

This is a professional liability case arising from a lawsuit related to an automobile accident (CR 12–18).[1] George Fitts was killed when the Lexus he was driving struck a pickup truck stopped to make a left-hand turn. His two brothers, Plaintiff Billy Fitts and non-party William Fitts, were passengers in the Lexus and were seriously injured (CR 13–15).

At the time of the accident, George Fitts had a primary automobile policy issued by Kemper affiliate Trinity ("the Kemper Policy") with a per person bodily injury limit of $250,000, and a $5 million umbrella policy with RLI Insurance Company (2 Supp. CR 11–58, 61–84). About a month after the November 2009 accident, Freida Fitts, Billy's wife, opened a claim with George Fitts's primary insurance carrier (2 Supp. CR 86–90, 313). Freida—a licensed insurance agent herself—forwarded documentation to Kemper and spoke with insurance representatives about the claim at Kemper and RLI throughout January 2010 (2 Supp. CR 103–09, 116, 125, 324–28).

---

[1] The clerk's record was filed in this Court on April 8, 2015, and is referenced throughout this brief as "(CR [page number])." The second supplemental clerk's record is referenced throughout this brief as "(2 Supp. CR [page number])." There are two "3A" Supplemental Clerk's Records, so designated by the district court clerk: one filed at 3:32:42 p.m. on June 17, and a second filed at 4:05:10 the same day. Co-Appellees E. Todd Tracy and the Tracy Firm refer in their brief to the later-filed 3rd Supplemental Record as the 4th Supplemental Record. This brief, however, refers to the Fourth Supplemental Clerk's Record as it is titled. References to that volume appear as "(4 Supp. CR [page number])."

1

Separately, Billy and Freida Fitts hired Melissa Richards-Smith, the law firm of Gillam & Smith, LLP (collectively "Gillam & Smith"), and Todd Tracy and the Tracy Law Firm in February 2010 to represent them in a product liability lawsuit against Toyota (2 Supp. CR 128–32). George Fitts' estate, his wife and children, and William Fitts and his wife Phyllis also hired Gillam & Smith, LLP. They signed contingent fee contracts with Gillam & Smith under which Billy and Freida agreed they would have authority "to accept or reject any final settlement amount *after receiving the advice of our attorneys*." (emphasis added); (2 Supp. CR 331, 337). Billy and Freida never informed Gillam & Smith that they had an open claim with Kemper at that time, that they had been in ongoing communications with Kemper for the preceding three months, or that Kemper had initiated settlement discussions with them (2 Supp. CR 140–66).

From the outset of their communications with Gillam & Smith, the members of the Fitts family were focused on proving a defect in the Lexus and maintained that George Fitts was not at fault in the accident. For instance, on the intake form that he completed for Gillam & Smith, Billy wrote that the Lexus caused the accident (2 CR 140–66, 152). At a meeting with Melissa Richards-Smith, Billy, Freida, William and Phyllis, William told Richards-Smith that George Fitts not only did nothing wrong in the wreck, but that George saved his life (2 Supp. CR 485). William Fitts explained that George "was unable to stop the car, and

2

swerved into the other car in order to take the brunt of the impact and save William's life" (*Id.*). In the same meeting, Billy Fitts told Richards-Smith that he yelled at George to stop the car, and George tried to pump the brake, but the car continued to accelerate even though George was hitting the brake" (*Id.*). Richards-Smith recalled that "both Billy and William stated that not only was George not at fault, but neither wanted to make a claim against him" (*Id.*).

Based on Billy's statements about the cause of the accident, Gillam & Smith prepared and filed a products liability petition against Toyota and filed it in Harrison County on March 18, 2010 (2 Supp. CR 168). In his deposition in the Toyota litigation, Billy testified under oath and penalty of perjury that a defect in the Lexus caused the accident (4 Supp. CR 24–44). At no time did Billy tell Gillam & Smith, or provide them any evidence, that his brother George Fitts caused the accident:

> Q (to Billy Fitts): Excluding what your lawyers have told you, what is your understanding of what was wrong with the Toyota?
>
> A (Billy Fitts): My understanding, what was wrong with the Toyota was that the car just took a sudden acceleration and would not stop, and that's what happened that day.

(*Id.* at 53).

Without informing or seeking the advice of their attorneys—and contrary to the fee agreement they signed with Gillam & Smith—Billy and Freida settled their claim with Kemper on March 26, 2010, for $250,000 (2 Supp. CR 210–11, Appendix Tab 1). In connection with that settlement, they signed a release extinguishing any and all rights they possessed to pursue a claim against George that arose out of the automobile accident. *Id.* The release provides that Billy and Freida Fitts:

> release, acquit and forever discharge George Fitts, Mary Fitts and Trinity Universal Insurance Company of and from all actions, causes of action, claims or demands for damages, costs, loss of use, loss of service, expenses, compensation, consequential damage or any other thing whatsoever on account of, or in any way growing out of, [the accident].

(2 Supp. CR 210–11, Appendix Tab 1).

Two weeks later, Freida emailed Melissa Richards-Smith, asking for the first time if filing a claim with George's excess insurer, RLI, would harm their position in the products liability lawsuit against Toyota. (2 Supp. CR 195) Richards-Smith said that it would, explaining that if Billy pursued George then Toyota "will certainly use that to turn the family against one another in court." *Id.* Richards-Smith stated that "[Billy] was there so only he knows which way to go on liability. I work for you and Billy so you have to give me my marching orders." *Id.* Despite this conversation, Freida still did not inform Melissa Richards-Smith at that time

4

that she had settled and signed a release with Kemper or that she had forwarded the Kemper Release to RLI. *Id.*[2]

Not until October 2010—more than six months after signing the Kemper Release—did Billy and Freida inform their attorneys about the existence of the release, that they had signed it, and that they had forwarded it to RLI (CR 404). Months later, on July 14th, Freida admitted to Kemper that she did not tell Richards-Smith or Gillam & Smith about the release because Richards-Smith "would get half their settlement" (2 Supp. CR 202–03). After Richards-Smith finally learned that Billy and Freida signed the release, she explained in an email to Freida that if Billy had blamed George for the accident, it could hurt the product liability case pending against Toyota (4 Supp. CR 18). Freida responded as follows:

> Melissa, Billy has never blamed George for the accident.
> He has been adamant from the beginning saying that the
> car (all of a sudden) started speeding at a high rate of
> speed.
>
> Why would anyone think Billy blamed George?

*Id.*

Billy and Freida's product liability lawsuit against Toyota eventually settled. On October 17, 2013, Billy and Freida sued Melissa Richards-Smith, The Law

---

[2] After receiving a copy of the Kemper Release, RLI closed Billy and Freida's file (2 Supp. CR 197–98).

Firm of Gillam & Smith, LLP, as well as their co-counsel, E. Todd Tracy, and The Tracy Firm, asserting claims for legal malpractice, breach of fiduciary duty and gross negligence (CR 12). The Petition alleged that, "[h]ad the Defendants not been blinded by the sensationalized yet unproven allegations against Toyota, Defendants would have turned their attention on behalf of a passenger against the driver/operator of the automobile and his negligent operation and his insurance coverage including liability, underinsured coverage and the umbrella policy" (CR 14). Among other things, Billy and Freida alleged that Defendants did not address or communicate any conflicts of interest in representing both the driver and the passenger of the Lexus, and that "Defendants allowed the statute of limitations to expire for the bringing of any causes of action on behalf of plaintiffs against George Fitts' umbrella policy and Plaintiffs' own insurance policy for the extensive damages sustained by Plaintiffs" (CR 215).

Todd Tracy and the Tracy Law Firm ("Tracy Appellees") filed a traditional motion for summary judgment on the basis of the Kemper Release (CR 93). They argued that the Kemper Release signed by Billy and Freida forever extinguished all claims they had against George Fitts and his insurers and, therefore, Billy and Freida could not prove that the conduct of the Tracy Defendants, rather than their own conduct, caused them injury (CR 101). Gillam & Smith filed a motion for summary judgment arguing that the Kemper Release negated the damage and

6

injury elements of Billy and Freida's claims (CR 163). Gillam & Smith also filed a supplemental motion for summary judgment, arguing that Billy and Freida's breach of fiduciary duty claim is but an improperly fractured legal malpractice claim (CR 204–13). The motions were set for submission. The trial court granted Gillam & Smith's Motion for Summary Judgment on December 1, 2014 (CR 292).

## SUMMARY OF THE ARGUMENT

This lawsuit is an attempt by Billy and Freida Fitts to blame their lawyers for the effect of a settlement and release that they negotiated and executed entirely on their own. After concealing that settlement and release from their lawyers and insisting that George Fitts was not at fault in the accident, Billy and Freida then turned around and sued their lawyers for not recommending separate counsel to pursue a claim against George's estate—a claim that would have directly contradicted their own statements about the accident and would have been barred by the release they chose to execute without the advice of their lawyers.

Billy and Freida do not dispute any of the following facts: They never informed Gillam & Smith that they believed George Fitts, the driver of the vehicle in the underlying accident, caused the accident. In fact, the record shows that Billy made many sworn statements directly to the contrary, insisting that the automobile accident in which he was injured was caused by the sudden and unintended acceleration of the Lexus driven by George Fitts. Further, Billy and Freida never

7

informed Gillam & Smith that they had an open personal injury claim—as opposed to a property claim—with George Fitts's primary automobile insurer, seeking compensation for their injuries when they hired Gillam & Smith to represent them in a product liability suit against Toyota. Nor did Billy and Freida inform Gillam & Smith that the insurer made a settlement offer and sent a proposed release in March 2010. Instead, Billy and Freida signed the release without seeking the advice of counsel, in breach of their legal representation agreement with Gillam & Smith.

A valid release is a complete bar to any later action based on the matters covered by the release. Here, the unambiguous language of the release that Billy and Freida signed within weeks of retaining Gillam & Smith, and without seeking their advice, bars them from pursuing a claim against George Fitts and recovering under his $5 million excess liability policy. Because Billy and Freida cannot prove that Gillam & Smith's conduct—rather than their own conduct—proximately caused them any damages, the trial court properly granted summary judgment on all claims. Billy and Freida's new appellate arguments—that they might have had defenses to the enforcement of the release or might have been able to pursue a fraudulent inducement claim against Kemper—were never raised in the trial court and, thus, are not preserved for appeal. In any event, nothing prevented them from raising those arguments in a suit against non-party Kemper.

8

The trial court also properly granted summary judgment on an independent basis on the breach of fiduciary duty claim. Texas courts do not permit a legal malpractice claim to be recast into separate claims, including a claim for breach of fiduciary duty. In any case, even if this court permits Billy and Freida's separate claim for breach of fiduciary duty, it fails in the absence of any allegation that Gillam & Smith gained an improper benefit through the representation.

For these reasons, this Court should affirm the trial court's summary judgment in favor of Gillam & Smith.

## ARGUMENT

### I. Standard of Review

An appellate court reviews a traditional summary judgment de novo, determining whether a party established its right to judgment as a matter of law. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A defendant moving for traditional summary judgment must disprove at least one element of plaintiff's causes of action or conclusively establish each essential element of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *see* Tex. R. Civ. P. 166a(c). If defendant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact to preclude summary judgment. *Booth*, 900 S.W.2d at 341.

9

On review, the appellate court takes the nonmovant's evidence as true, indulging every reasonable inference resolving all doubts in favor of the nonmovant. *Knott*, 128 S.W.3d at 215. If the trial court's order granting summary judgment does not specify the grounds for the judgment, a reviewing court must affirm the trial court's order if any of the theories presented to the trial court and preserved for appeal are meritorious. *Id.* at 216.

## II. Billy and Freida's Negligence and Breach of Fiduciary Duty Claims Fail Because They Cannot Establish the Elements of Proximate Cause or Damages as a Matter of Law

### A. Principles of Contract Interpretation Governing Interpretation of the Release

In construing a written contract, the court of appeals' objective "is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "If the written instrument is so worded that it can be given a certain or definite meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker*, 650 S.W.2d at 393. Only if a contract is susceptible to more than one "reasonable" interpretation is it considered ambiguous. *Id.*

The parol evidence rule generally circumscribes the use of extrinsic evidence when interpreting an integrated document. *Sun Oil Co. (Delaware) v.*

10

*Madeley*, 626 S.W.2d 726, 731 (Tex. 1981).  Where a contract contains a merger or integration clause, its execution presumes that all prior negotiations and agreements relating to the transaction are merged into the contract.  *Barker v. Roelke*, 105 S.W.3d 75, 83 (Tex. App.—Eastland 2003, pet. denied).  Such an agreement will "be enforced as written and cannot be added to, varied, or contradicted by parol evidence."  *ISG State Ops., Inc. v. Nat'l Heritage Ins. Co., Inc.*, 234 S.W.3d 711, 719 (Tex. App.—Eastland 2007, pet. denied).  Parol evidence is not admissible for the purpose of creating an ambiguity in an agreement.  *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *see David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written, and parol evidence will not be received . . . .").

  B. *The Kemper Release Unambiguously Covers All Actions or Claims That Billy and Freida May Have Had Against George and Mary Fitts.*

"In general, a release surrenders legal rights or obligations between the parties to an agreement."  *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507–08 (Tex. 1993) (citing *Cox v. Robison*, 105 Tex. 426, 150 S.W. 1149, 1155 (Tex. 1912)).  A release applies to a party who is specifically identified in the release or described with sufficient particularity.  *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984).  The release extinguishes the claim

11

or cause of action "as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Dresser Indus.*, 853 S.W.2d at 508.

Under the plain language of the Kemper Release, in exchange for $250,000, Billy and Freida Fitts agreed to:

> release, acquit and forever discharge George Fitts, Mary Fitts and Trinity Universal Insurance Company of and from and all actions, causes of action, claims or demands for damages, costs, loss of use, loss of service, expenses, compensation, consequential damage of any other thing whatsoever on account of, or in any way growing out of [the November 6, 2009 accident] . . .

(2 Supp. CR 210–11).

The legal meaning of this plain language is a complete release of any and all claims Billy and Freida had against George and Mary Fitts that were related to the automobile accident. By virtue of the release, Billy and Freida no longer had any legal claims against George Fitts and, thus, nothing to pursue from his umbrella liability insurer, RLI.

C.     *The Insuring Language of the RLI Umbrella Policy Required George Fitts to Be Legally Liable Before the Excess Policy Was Triggered*

The insuring language of the RLI umbrella policy states that:

> We [RLI] will pay an amount for which anyone covered by this policy *becomes legally liable* for **Injury** due to an **Occurrence** which takes place during the Policy Period and in the Policy Territory. This insurance applies:

12

a. As excess insurance over and above the greater of (1) the Minimum Limit of Coverage as stated in the Declarations which is required to be provided by the Basic Policies. . .

(2 Supp. CR 263, 273) (italics added). The relevant policy definitions are as follows:

> **Injury** means Bodily Injury, Personal Injury or Property Damage

(2 Supp. CR 271).

> **Occurrence** means:
>
> 1. An accident, including continuous or repeated exposure to the same general harmful conditions, that results in **Bodily Injury** or **Property Damage**.
>
> 2. An offense that results in **Personal Injury**.

*Id.*

> **Basic Policy** or **Policies** means a policy or policies listed in the declarations . . . which provides primary liability coverage.

*Id.*

Because he was the named insured on the RLI policy, George Fitts was "covered by this policy" for the Lexus he owned and that was involved in the 2009 accident.

Texas courts have held that a covered person becomes "legally liable" to pay an amount "only after an insured's legal responsibility for covered damages has

13

been established by judgment or settlement." *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 890 (Tex. App.—Dallas 2008, pet. denied); *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.) ("[T]he duty to indemnify only arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit."); *see Haygood v. Hawkeye Ins. Servs. Inc.*, No. 12-11-00262CV, 2012 WL 1883811, at *2 (Tex. App.—Tyler, May 23 2012, no pet.).

In *Ohio Casualty*, the Dallas Court of Appeals examined whether Time Warner proved an entitlement to policy proceeds under an umbrella policy requiring that West American Insurance Company pay sums "that the insured becomes legally obligated to pay as damages." *Ohio Cas.*, 244 S.W.3d at 890. The court observed that based on the insuring language of the umbrella policy, the duty to indemnify arose only after the insured's legal responsibility for covered damages was established by judgment or settlement. This conclusion, the court noted, "finds ample support in our State's jurisprudence and other authorities." *Id.* at 890.

Here, Billy and Freida did not obtain a settlement with or a judgment establishing George Fitts's legal responsibility for covered damages beyond the $250,000 they have already received. The unambiguous language of the release signed by Billy and Freida would have prevented them from ever doing so. Based

14

on the release, George Fitts can no longer be "legally liable" to Billy and Freida for the November 2009 accident.

D. *Billy and Freida's Evidence of the Parties' Purported Intentions is Irrelevant and Inadmissible*

**1. The extrinsic evidence Billy and Freida offer is inadmissible parol evidence**

In an attempt to convince this Court that the Kemper Release does not mean what it says, Billy and Freida rely on an email from Sharon Baker, a claims representative with Kemper. In the email, Baker tells Freida that "the settlement of this claim will have no [e]ffect on any claims you make against the excess insurance carrier" (3 CR 469–470). Based on this email, Billy and Freida argue that "both Kemper and Appellants intended for the Kemper Release to only apply to the tender of policy limits under the Kemper Primary Policy" (Appellants' Brief at p. 18).

But Billy and Freida do not argue, and have never argued, that the Kemper Release is ambiguous. Nor have they offered any other explanation as to why this parol evidence—or any other extrinsic evidence—should be allowed to negate or alter the plain terms of the Kemper Release. *See Nat'l Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) ("Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument."

15

(internal citations omitted)). Because the plain language of the Kemper Release is absolute and unyielding, it is the best indicator of the parties' intentions. This Court should reject Billy and Freida's attempt to rewrite the plain language of the Agreement, as did the trial court.

**2.    The extrinsic evidence offered by Billy and Freida is barred by the Agreement's merger clause**

Aside from being barred by the parol evidence rule, the evidence of "industry custom" and the parties "true intentions" (according to Billy and Freida), is inadmissible because the Kemper Release contains an integration and merger clause. The Agreement states:

> No promise or inducement which is not herein expressed has been made to me/us, and in executing this release I/we do not rely upon any statement or representation made by any person, firm or corporation hereby released . . .
>
> This release contains the ENTIRE AGREEMENT between the parties hereto . . .

(2 Supp. CR 210).

As the Eastland Court of Appeals explained in *Barker v. Roelke*, an integration or merger clause such as this prevents the introduction of extraneous agreements:

> The parties' execution of a written agreement presumes that all prior negotiations and agreements relating to the transaction have been merged into it and it will be

16

enforced as written and cannot be added to, varied, or contradicted by parol evidence. *This rule is particularly applicable where the written contract contains an integration clause*.

*Barker v. Roelke*, 105 S.W.3d at 83 (emphasis added). Accordingly, Billy and Freida may not rely on the Sharon Baker email or any other extrinsic evidence purporting to state the parties' intentions. *See also Smith v. Smith*, 794 S.W.2d 823, 827 (Tex. App.—Dallas 1990, no writ) ("[I]f the parties have integrated their agreement into a single written memorial, all prior negotiations and agreements with regard to the same subject matter are excluded from consideration whether they were oral or written.").

### E. The Release Specifically Releases Any Claims Against George Fitts

Billy and Freida argue that the Kemper Agreement did not release their claims against George Fitts under the RLI policy because it did not specifically name the RLI policy. This argument misses the mark. "[A] party who releases an insured from liability retains no cause of action against the insurer." *Pool v. Durish*, 848 S.W.3d 722, 723 (Tex. App.—Austin 1992, writ denied). This rule contemplates that the insured must be liable to the injured person before the insurer can be held liable. *Id.* "*Settlement of all claims against the insured destroys this required link*." *Id.* (emphasis added).

17

Here, Billy and Freida had no direct claim against RLI under the umbrella policy, so the fact that the Agreement did not mention RLI or the umbrella policy is irrelevant. *See id; Morris v. Allstate*, 523 S.W. 299, 301 (Tex. Civ. App.— Texarkana 1975, no writ) (holding that plaintiff–appellant has no right of action against insurance company on the questions of coverage and liability for payment of damages until she first established her claim against tortfeasor by judgment or written agreement). The required link between Billy and Freida and the RLI policy was destroyed when Billy and Freida signed an Agreement releasing all of their claims against George Fitts, the insured, related to the November 2009 accident. Because George Fitts cannot be held liable to the Fittses, the RLI policy can never be triggered. If Billy and Freida attempt to sue George Fitts's estate, they will find themselves in the same exact scenario they find themselves in now: holding a $250,000 settlement and facing a meritorious summary judgment based on the unambiguous terms of the Kemper Release.

Billy and Freida's brief contends that Gillam & Smith argued "essentially" that execution of the Kemper Release was the sole proximate cause of Billy and Freida's injuries, but did not conclusively establish the inferential rebuttal defense (Appellants' Brief at p. 34–35). This argument is but a straw-man and must be rejected.

18

Sole proximate cause was not a theory before the trial court, nor is it at issue here. The broader argument raised by Gillam & Smith is the lack of a causal relationship between the damages Billy and Freida sued for, the actions of Gillam & Smith, and the alleged injury the Fittses suffered. *See Hamlin v. Gutermuth*, 909 S.W.2d 114, 117 (Tex. 1995). Suffering harm while being represented by a lawyer does not *ipso facto* mean the lawyer caused the harm. In this case, Billy and Freida's alleged harm—their inability to sue George Fitts, obtain a judgment against him, and then recover against his $5 million insurance policy—is the direct result of their execution of the Kemper Release without first consulting their attorneys. The release conclusively disproves the causation and damages elements of their claims.

## III. Billy and Freida's Purported Contract Defenses Are Not Properly Before This Court

For the first time in the history of this case, Billy and Freida speculate in their appellate brief that even if the settlement released RLI, Billy and Freida could, nevertheless, have rescinded the release based on contract defenses of mutual mistake and fraudulent inducement. Billy and Freida argue that "assuming arguendo that the release had the legal effect that Appellees claim it did, that did not relieve Appellees of their duty to their clients to resolve the fraud that was perpetrated upon their clients" (Appellants' Brief at p. 26).

19

These novel arguments were never raised by Billy and Freida in the trial court. They are, therefore, waived. *See* Tex. R. Civ. P. 166a(c) ("[In summary judgment practice,] "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); Tex. R. App. P. 33.1(a)(1) (requiring that, to properly present a claim for review on appeal, the record must reflect that the party raised that claim in the trial court); *see D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009) ("A non-movant must present its objections to a summary judgment motion expressly by written answer or other written response to the motion in the trial court or that objection is waived."); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000) (stating that in an appeal of summary judgment, the Court would not consider arguments or issues that were not presented to the trial court). Because Billy and Freida never made these arguments in the trial court, they are not preserved for appeal and this Court may not consider them.

Even if this Court could consider Billy and Freida's purported contract defenses, however, they still would not carry the day. The alleged mistake about the Kemper Release was a mistake about the release's legal effect; it was not "a misconception of mistake of a material fact" (Appellants' Brief at p. 21). *See Williams v. Glash*, 789 S.W.2d 21, 264 (Tex. 1990). It has long been established

20

that a mistake of law is not grounds for rescission of a contract. *Herrmann v. Lindsey*, 136 S.W.3d 286, 292 (Tex. App.—San Antonio 2004, no pet.); *see Ussery v. Hollebeke*, 391 S.W.2d 497, 501 (Tex. App.—El Paso, 1965 writ ref'd n.r.e.).

Billy and Freida's theory of rescission arising from Kemper's purported misrepresentation about the legal effect of the release is likewise flawed because it is based on a non-actionable statement of opinion, not of *fact*. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337–38 (Tex. 2011); *Citizens Standard Life Ins. Co. v. Muncy*, 518 S.W.2d 391, 394–95 (Tex. Civ. App.—Amarillo 1974, no writ) ("To be fraudulent and the basis for rescission of a contract, the misrepresentation must be one of present or past facts.").

Finally, to the extent Billy and Freida had a valid claim for rescission or fraud against Kemper, their remedy was to pursue those claims against Kemper. Billy and Freida could have pursued that remedy at the time they learned their claim under the RLI policy was barred by virtue of the Kemper Release. After all, the release was less than four years old when they filed this suit. *See* Tex. Civ. Prac. & Rem. Code § 16.051; *Precision Sheet Metal Mfg. Co., Inc. v. Yates*, 794 S.W.2d 545, 550 (Tex. App.—Dallas 1990, writ denied) ("Suits for rescission predicated upon fraud, failure of consideration, and mutual mistake are governed by the four-year statute of limitations.") Their failure to do so is but further

21

evidence that Gillam & Smith's conduct did not proximately cause Billy and Freida's damages related to the signing of the Kemper Release.

**IV.    Based on Billy and Freida's Own Representations and Testimony, There Was No Significant Likelihood of a Future Conflict of Interest Developing in the Course of the Toyota Litigation**

Billy and Freida maintain that a conflict of interest existed in Gillam & Smith's representation of both Billy and Freida Fitts and other members of the Fitts family.  Even if this were true, however, it would not change the fact that the Kemper Release precludes them from showing they were damaged by the alleged conflict.  Furthermore, the fatal flaw with this theory is that it is inescapably contrary to the undisputed statements and testimony given by Billy Fitts in the lawsuit filed against Toyota.

According to Billy and Freida, Gillam & Smith should have somehow divined that the statements Billy Fitts made on his intake form, in verified interrogatories, and in his sworn testimony, were false.  Moreover, according to Billy and Freida, Gillam & Smith should have somehow assumed the opposite of what Billy Fitts told them—that he actually blamed his brother for the accident, and not some product defect in the Lexus—and then proceeded to file a lawsuit against George Fitts, against Billy and Freida's clear wishes.

Lawyers are not permitted to ignore their clients and the information provided by them.  Rather, in Texas an attorney is expected to evaluate possible

22

claims and potential conflicts using the information the client provides. A lawyer's conduct is evaluated based on the information the attorney possesses at the relevant time, rather than the theoretical facts posited after-the-fact. *See Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). "A violation of Rule 1.06(b)(2) occurs if the lawyer's representation of one client "reasonably appears to be or becomes adversely limited by the lawyer's or law firm's responsibilities to another client . . . ." Tex. Disciplinary Rules Prof'l Conduct R. 1.06(b)(2), *reprinted in* Tex. Gov't Code Ann., tit 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art. X, § 9). Given that Billy and Freida insisted from the outset that George Fitts was not responsible for the 2009 accident, Billy and Freida cannot now argue, after-the-fact, that their representation reasonably appeared to be adversely limited by the Smith Appellee's representation of George Fitts in violation of Rule 1.06(b)(2). *See* Tex. Comm. On Prof'l Ethics, Op. 624 (2013) (stating that if in the early stages of representation a lawyer reasonably believes that there is no significant likelihood of the possibility of a future conflict developing, then there is no Rule 1.06(b)(2) conflict).

## V. Billy and Freida's Fiduciary Duty Claim Is Nothing More Than an Improperly Fractured Legal Malpractice Claim

A claim that arises out of allegedly bad legal advice or potentially improper legal representation is one for legal malpractice—not for breach of fiduciary duty.

23

*See Isaacs v. Schleier*, 356 S.W.3d 548, 559 (Tex. App.—Texarkana 2011, pet.

denied); *Greathouse v. McConnell*, 982 S.W.3d 689, 692 (Tex. App.—Dallas

2007, pet. denied); *Goffney v. Rabson*, 56 S.W.3d 186, 190–93 (Tex. App.—

Houston [14th Dist.] 2001, no pet.) ("Texas law does not permit a plaintiff to

divide or fracture her legal malpractice claims into additional causes of action.");

*Aiken v. Hancock*, 115 S.W.3d 26, 28–29 (Tex. App.—San Antonio 2003, pet.

denied) (holding that a claim arising from alleged misrepresentations by an

attorney constituted only malpractice claim and could not be fractured into claims

under the DTPA or under a breach of fiduciary duty theory).

This Court has summed up the distinction between the two claims:

> The focus of breach of fiduciary duty is whether an attorney obtained an improper benefit from representing a client, while the focus of a legal malpractice claim is whether an attorney adequately represented a client.
>
> The essence of a breach of fiduciary duty involves the "integrity and fidelity" of an attorney. A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interests to his own, retaining the client's funds, using the client's confidences improperly, taking advantage of the client's trust, engaging in self-dealing, or making misrepresentations.
>
> Unlike a claim for breach of fiduciary duty, legal malpractice is based on negligence, because such claims arise from an attorney's alleged failure to exercise ordinary care. A cause of action for legal malpractice

arises from an attorney giving a client bad legal advice or otherwise improperly representing the client.

*Isaacs*, 356 S.W.3d at 559 (internal citations omitted) (quoting *Kimleco Petro., Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923–24 (Tex. App.—Fort Worth 2002, pet denied)).

Applying this distinction, the Court held in *Isaacs* that a plaintiff's claims that "concern[ed] the conflict of interest, failure to disclose the dual nature of the representation and possible consequences, and failing to obtain informed consent and waiver of any conflicts of interest" stated only claims for negligence, rather than fraud or breach of fiduciary duty. 356 S.W.3d at 559. As here, the plaintiffs' claims in *Isaacs* did not "allege the type of dishonestly or intentional deception that will support a breach-of-fiduciary duty claim." *Id.* at 559; *see Won Pak v. Harris*, 313 S.W.3d 454, 458 (Tex. App.—Dallas 2010, pet. denied) (holding that plaintiff's breach-of-fiduciary duty claim does "nothing more than recast her claims for professional negligence under alternative labels").

Regardless of the labels used in their pleadings, Billy and Freida's attempt to impermissibly recast their legal malpractice claim as an additional claim for breach of fiduciary duty should be rejected. *See Pak*, 313 S.W.3d at 458. Billy and Freida never alleged in the trial court that Gillam & Smith engaged in acts of dishonesty or intentional deception or that Gillam & Smith subordinated Billy and

25

Freida's interests to their own. Billy and Freida instead argued that "it is easy to see how [Gillam & Smith] failed to realize that Billy and Freida Fitts's best case was not against Toyota, but against George Fitts' insurance." (CR 230). These are allegations of mere negligence; they do not rise to allegations of dishonesty and intentional deception that are required to sustain a claim of breach of fiduciary duty.

The cases that Billy and Freida rely on prove this point. For instance, in *Trousdale v. Henry*, 261 S.W.3d 221, 232 (Tex. App.—Houston [14th Dist.] 2008, pet. denied), the Fourteenth Court of Appeals emphasized that to support a breach of fiduciary duty claim, "the allegations in the petition must amount to self-dealing, deception, or misrepresentations in the representation of the plaintiff that go beyond the mere negligence allegations in a legal malpractice action." In that case, the attorneys made affirmative misrepresentations to the client and refused to return the client's files so they could conceal that the cases had been dismissed and time-barred. *Id.* at 232; *see also Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., PC.*, 284 S.W.3d 416, 438–39 (Tex. App.—Austin 2009, no pet.) (concluding that appellants' "conflict of interest" complaint sounded in negligence only and not breach of fiduciary duty because the appellants did not allege that the attorneys "deceived them, pursued their own pecuniary interest over the appellants' interests,

26

or obtained any improper benefit from failing to disclose the conflict or advising appellants to obtain separate counsel" (internal alterations omitted)).

Likewise, in all the cases Billy and Freida point to as supporting their fractured claims, the plaintiffs made allegations of fraud or self-dealing to support their separate breach of fiduciary duty claim. *See, e.g.*, *McMahan v. Greenwood*, 108 S.W.3d 467, 496 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (alleging that the attorney gave false information and advice to wrongfully induce the client into contributing assets);[3] *Archer v. Med. Protective Co. of Fort Wayne, Indiana*, 197 S.W.3d 422, 427–28 (Tex. App.—Amarillo 2006, pet. denied) (allowing a separate claim of breach of fiduciary duty based on an attorney's pursuit of his own pecuniary interests over his clients').

Here, Billy and Freida never argued to the trial court that Gillam & Smith engaged in self-dealing or deception that transcended professional negligence. (CR 7) Indeed, Billy and Freida failed to allege in their petition that Gillam & Smith deceived them or acted dishonestly. In addition, they failed to plead their newly argued theory that Gillam & Smith obtained an improper benefit from the legal representation of Billy and Freida. The only "benefit" they identified were fees associated with the recovery of expenses they incurred in the prosecution of the

---

[3] In *Jampole v. Matthews*, 857 S.W.2d 57, 61–63 (Tex. App—Houston [1st Dist.] 1993, writ denied), the court held that the client stated a claim for fraud separate from a negligence claim.

Toyota lawsuit—none of which Billy and Freida argue were improper. (CR 234) ("Defendants were able to pursue the Toyota litigation and ultimately recover the expenses they incurred in the prosecution of the suit.")

Receiving payment for an expert fee, like payment for attorney's fees, is insufficient, as a matter of law, to support a breach of fiduciary duty claim. *See Beck*, 284 S.W.3d at 438–39 ("Although appellants urge that [defendants] . . . stood to obtain attorneys' fees that a separate counsel otherwise would have received . . . both the *Murphy* and *Floyd* courts characterized such a complaint, standing alone, as a negligence claim") (citing *Murphy v. Gruber*, 241 S.W.3d 689, 699 (Tex. App.—Dallas, pet. denied), and *Floyd v. Hefner*, 556 F. Supp. 2d 617, 662 (S.D. Tex. 2008)); *see Murphy*, 241 S.W.3d at 699 (rejecting argument that obtaining a multi-million dollar attorney's fee, without more, can support a breach-of-fiduciary-duty claim); *see also Won Pak*, 313 S.W.3d at 454 ("To the extent that appellants argue [the attorney] favored his own pecuniary interest in obtaining his legal fee over appellants' interests, we conclude that this interest, without more, is insufficient to allege the type of dishonesty or intentional deception necessary to convert a negligence claim into one for breach of a fiduciary duty.").

Notably, Gillam & Smith did not receive any fees for their two-year representation of Billy and Freida. And Gillam & Smith never received any portion of the $250,000 Kemper settlement either. In short, Billy and Freida have

28

made no tenable allegation that Gillam & Smith obtained an improper benefit from representing them.

At bottom, "[t]he essence of a breach of fiduciary duty claim involves the 'integrity and fidelity' of an attorney." *Id.* (citing *Goffney*, 56 S.W.3d at 193). For example, "failure to deliver funds belonging to a client, improper use of client confidences, or engaging in self-dealing" are the types of improper conduct giving rise to a breach of fiduciary duty claim. *See Aiken v. Hancock*, 115 S.W.3d 26, 28 (Tex. App.—San Antonio 2003, pet. denied); *see also Trousdale v. Henry*, 261 S.W.3d 221, 227 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Because Billy and Freida's claim is really for negligence, and not breach of fiduciary duty, the trial court properly granted summary judgment on that claim. This Court should affirm.

## CONCLUSION AND PRAYER

At bottom Billy and Freida have sued Gillam & Smith for failing to advise them to retain separate counsel to pursue a claim against the umbrella insurer of George Fitts—a claim that was rendered impossible by their own statements and their own intentionally concealed release of George Fitts. Because the Kemper Release legally bars Billy and Freida's ability to establish that Gillam & Smith proximately caused them damages, the trial court properly granted Gillam & Smith's Motion for Summary Judgment. The trial court also correctly granted

29

summary judgment on the basis that Billy and Freida have no breach of fiduciary duty claim separate from their legal malpractice claim.

For these reasons, Gillam & Smith request that this Court affirm the trial court's summary judgment.  Gillam & Smith also pray for any other and further relief, at law or in equity, to which they are justly entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS L.L.P.

By:  /s/ Wade Crosnoe
   Wade C. Crosnoe
   State Bar No.  00783903

Sara B. Churchin
State Bar No. 24073913
701 Brazos, Suite 1500
Austin, TX 78701
Telephone:  (512) 703-5078
Fax:  (512) 708-8777
E-mail:  wcrosnoe@thompsoncoe.com

Shawn W. Phelan
State Bar No. 00784758
Add Tommy Horan
Thompson, Coe, Cousins & Irons, L.L.P.
Plaza of the Americas
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, TX 75201-2832
Telephone:  (214) 871-8245
Telecopy:  (214) 871-8209
E-Mail: sphelan@thompsoncoe.com

*Attorneys for Appellees Melissa Richards-Smith and Law Firm of Gillam & Smith, LLP*

## CERTIFICATE OF COMPLIANCE

I, Wade Crosnoe, the undersigned attorney, do hereby certify that the foregoing Appellees' Brief contains 6,993 words, according to the word count of the computer program used to prepare it, and uses a 14-point typeface for all text in compliance with Tex. R. App. P. 9.4(i).

By: /s/ Wade Crosnoe
Wade C. Crosnoe

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Appellees' Brief was served on August 7, 2015, via electronic service or email, to the following counsel:

Lindsey M. Rames
Rames Law Firm, P.C.
5661 Mariner Drive
Dallas, TX 75237
Telephone: 214.884.8860
Facsimile: 888.482.8894
Email: lindsey@rameslawfirm.com

Carter L. Hampton
Hampton & Associates, P.C.
1000 Houston Street, Fourth Floor
Fort Worth, TX 76102
Telephone: 817.877.4202
Facsimile: 817.877.4204
Email: clhampton@hamptonlawonline.com
*Attorneys for Appellants,*
*Billy Fitts and Freida Fitts*

Bruce A. Campbell
Campbell & Chadwick
4201 Spring Valley Road, Suite 1250
Dallas, TX 75244
*Attorney for Appellees E. Todd Tracy*
*and The Tracy Firm, Attorneys at Law*

/s/ Wade C. Crosnoe
Wade C. Crosnoe

31

# Kemper

A UNITRIN BUSINESS

## RELEASE OF ALL CLAIMS

Claim No: 464 309877
Adj Kristine Baker

FOR AND IN CONSIDERATION OF the payment to me/us of the sum of Two Hundred Fifty Thousand Dollars (S 250,000.00 ), and other good and valuable consideration, I/we, being of lawful age, have released and discharged, and by these presents do for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge George Fitts, Mary Fitts, and Trinity Universal Insurance Company of and from and all actions, causes of action, claims or demands for damages, costs, loss of use, loss of services, expenses, compensation, consequential damage or any other thing whatsoever on account of, or in any way growing out of, and all known and unknown personal injuries and death and property damage resulting or to result from an occurrence or accident that happened on or about the 6th day of November, 2009, at or near Highway 79 Hearne TX.

I/we hereby acknowledge and assume all risk, chance or hazard that the said injuries or damage may be or become permanent, progressive, greater, or more extensive than is now known, anticipated or expected. No promise or inducement which is not herein expressed has been made to me/us, and in executing this release I/we do not rely upon any statement or representation made by any person, firm or corporation, hereby released, or any agent, physician, doctor or any other person representing them or any of them, concerning the nature, extent or duration of said damages or losses or the legal liability therefor.

I/we understand that this settlement is the compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of the persons, firms and corporations hereby released by whom liability is expressly denied. I/we further agree that this release shall not be pleaded by me/us as a bar to any claim or suit.

It is further agreed and understood that Billy Fitts will protect, indemnify and hold harmless George Fitts, Mary Fitts and Trinity Universal Insurance Company from claims, liens or subrogated interests arising from benefits provided to or on behalf of Billy Fitts which are related to the incident giving rise to this claim. The undersigned acknowledges that he/she will satisfy such claims, liens or subrogated interests.

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

Release of All Claims dot

PLF00013

210

# Kemper

A UNITRIN BUSINESS

I/we further state that I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.

WITNESS _____ hand and seal this __26th__ day of __March,__ 2010

WITNESSES

_Maypaw Roberson_ ,

ADDRESS PO BOX 1271 Linden Tx ;

_Staci Well_ ,

ADDRESS PO BOX 1233 Linden TX

CAUTION! READ BEFORE SIGNING

_Billy Fitts_ _____ (SEAL)

Billy Fitts

_Freida Fitts_ _____ (SEAL)

Freida Fitts

_____ (SEAL)

State of __Texas__
County of __Cass__

This instrument was acknowledged before me on 31st day of March 2010 by Billy & Freida Fitts

_Stacy Liles_
Notary Public's Signature
My Commission Expires __6-18-11__

STACY LILES
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 6-18-2011

Release of All Claims.doc

PLF00014

211